790 P.2d 287

STATE of Arizona, Appellee,

v.

Miguel
RODRIGUEZ–GONZALES, Appellant.

No. 1 CA–CR 12046.

Court of Appeals of Arizona,
Division 1, Department D.

Feb. 15, 1990.

Reconsideration Denied April 16, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., and Ronald L. Crismon, Asst. Atty. Gen., Phoenix, for appellee.

John C. Williams, Prescott, for appellant.

GERBER, Presiding Judge.

Appellant Miguel Rodriguez–Gonzales (defendant) was indicted on March 31, 1987, on three counts of attempted murder in the first degree; one count of second degree escape; and one count of resisting arrest. Prior to trial, the state filed allegations of prior convictions. Defendant's jury trial ended on August 17, 1987, with guilty verdicts on three counts of attempted murder and the resisting arrest count. The jury acquitted him on the escape charge. On October 6, 1987, defendant was sentenced to the maximum aggravated term of twenty-one years on each of the three attempted murder convictions with each sentence concurrent. On the resisting arrest conviction, defendant was sentenced to the aggravated term of 1.78 years consecutive to the attempted murder sentences. He was credited for 196 days of presentence incarceration and ordered to pay a total of $400 in felony penalty assessments. He filed a timely notice of appeal.

The facts are as follows. On March 22, 1987, Miguel Rodriguez–Gonzales was at the Silver Dollar Bar in Phoenix. After an incident in the men's room, two uniformed security guards ejected him from the back door of the bar. Approximately one-half hour later, he returned to the back door armed with a handgun. He fired four or more shots into the bar. The shots struck both uniformed security guards and an innocent bystander. All three were seriously wounded. All three survived. Phoenix police officers arrested him the next day.

On appeal, defendant's appointed counsel filed a brief in compliance with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). On September 13, 1988, this court ordered the state to file an answering brief addressing two issues:

(1) Whether the doctrine of transferred intent has any application to attempted murder, a crime that is complete even if defendant's criminal conduct

causes no actual harm to the intended victim; and if so,

(2) Whether a jury should be instructed on transferred intent to kill when a defendant, having injured both his intended victim and a bystander, is charged with multiple attempted murders—one as to the intended victim and one as to the unintended victim.

## ATTEMPTED MURDER AND TRANSFERRED INTENT

In Arizona, a person commits first-degree murder if "intending or knowing that his conduct will cause death, such person causes the death of another with premeditation." A.R.S. § 13–1105(A)(1). A person commits attempted first degree murder if, "acting with the kind of culpability otherwise required for commission of this offense, the person: (1) Intentionally engages in conduct which would constitute [the] offense if the attendant circumstances were as the person believes them to be; or (2) Intentionally does or omits to do anything which, under the circumstances as such person believes them to be, is any step in a course of conduct planned to culminate in commission of [an] offense." A.R.S. § 13–1001(A)(1) and (2).

■ The application of the doctrine of transferred intent to attempted first degree murder is a question of first impression in Arizona. Unlike some jurisdictions, Arizona has a transferred intent statute, which provides:

If intentionally causing a particular result is an element of an offense, and the actual result is not within the intention or contemplation of the person, that element is established if:

(1) the actual result differs from that intended or contemplated only in the respect that a different person or different property is injured or affected or that the injury or harm intended or contemplated would have been more serious or extensive than that caused; or

(2) the actual result involves similar injury or harm as that intended or contemplated and occurs in a manner which the person knows or should know is rendered

substantially more probable by such person's conduct.

A.R.S. § 13–203(B). Arizona's legislature has seen fit to codify the doctrine of transferred intent and to extend that doctrine to intentional criminal conduct causing an unintended result. Nothing in the wording of the statute prohibits the doctrine from applying to attempted murder situations. On the contrary, it appears intended to apply to the precise fact situation in this case.

Arizona's transferred intent statute is taken from the Model Penal Code. *State v. Cantua–Ramirez*, 149 Ariz. 377, 718 P.2d 1030 (App.1986). The comment to Model Penal Code § 2.03 states:

Subsection 2(A) (A.R.S. § 13–203(B)(1)) deals with the situations in which the actual result differs from the result designed or contemplated only in that a different person or property was injured or affected, or in that the injury or harm designed or contemplated would have been more serious or extensive than that which actually occurred. Following existing law, the Code makes such differences immaterial.

Model Penal Code § 2.03 commentary at 260–61 (1985). Under our statute, criminal intent "follows the bullet" from anticipated to unanticipated victims. As applied to Arizona's attempt statute, A.R.S. § 13–1001(A)(1) and (2), transferred intent addresses the circumstances surrounding an attempted crime as the actor believes them to be, i.e., where the actor's belief about some facts varies from the actual circumstances only insofar as there is a different victim or different harm. Intent to murder is transferable to each unintended victim once there is an attempt to kill someone.

Though this is its first appearance in this state in an attempted murder context, the transferred intent doctrine has a long history. English courts recognized the doctrine as early as 1576 in *Reg. v. Saunders*, 2 Plowd. 473, 474a, 75 Eng.Rep. 706, 708 (1576):

And therefore it is every man's business to foresee what wrong or mischief may happen from that which he does with an ill-intention, and it shall be no excuse for him to say that he intended to kill another, and not the person killed. (c) For if a man of malice prepense shoots an arrow at another with an intent to kill him, and a person to whom he bore no malice is killed by it, this shall be murder in him, for when he shot the arrow he intended to kill, and inasmuch as he directed his instrument of death at one, and thereby has killed another, it shall be the same offence in him as if he had killed the person he aimed at ... so the end of the act, viz. the killing of another shall be in the same degree, and therefore it shall be murder, and not homicide only.

Despite verbal differences, A.R.S. § 13–203(B) is consistent with this ancient doctrine.

## INSTRUCTIONS AS TO THE INTENDED AND UNINTENDED VICTIMS

■ At trial, the jury was instructed on transferred intent as to the bystander, Rick Silva (Silva), who was wounded. Subsequently, the jury returned a guilty verdict for the attempted first degree murder of Silva. We find no error in this instruction or in this verdict.

The argument that the jury instructions and verdict are error simply because the defendant lacked the intent to commit first degree murder upon Silva lacks merit for reasons already given. Defendant now argues in addition that the crime of attempted murder was complete when he committed an overt act in furtherance of his attempt to harm the intended victims, the security guards. We disagree. The offenses with which defendant was charged are constituted, in part, by the results of that conduct. *State v. White*, 160 Ariz. 377, 773 P.2d 482 (App.1989); *State v. Gunter*, 132 Ariz. 64, 69–70, 643 P.2d 1034, 1039–40 (App.1982). The act of shooting did not end when the first bullet found its intended target, but rather when the final victim was hit.

Arizona law has already addressed this issue in an assault context, *Cantua–Ramirez, supra.* There the appellant intended to strike the baby's mother. The intent was formed and the act attempted while the mother held the baby, the unintended target. There the court stated:

Subsection (B)(1) of Arizona's transferred intent statute applies where the actual result of the appellant's conduct differs from that intended "only in the respect that a different person ... is injured." The appellant intended an assault on the mother, and an assault on the baby resulted. Had he succeeded in striking the baby's mother, the injury which resulted would most likely be a bruise or laceration. The injury actually suffered by the baby—the unintended victim—was a facial bruise which persisted for one week. The injury was the same; the only difference was the classification of the offense as a felony instead of a misdemeanor and the range of imposable punishment. We believe the transferred intent instruction was properly given.

*Cantua–Ramirez*, 149 Ariz. at 380, 718 P.2d at 1033.

The same reasoning applies to the present case. The instruction was correct. In any event, defendant did not object to the instruction on transferred intent. Failure to object to an instruction waives any potential error unless that error is fundamental. *State v. Grilz*, 136 Ariz. 450, 454, 666 P.2d 1059, 1063 (1983). No fundamental error appears in the record.

Defendant's convictions and sentences are therefore affirmed.

FIDEL, J., and MONTIEL, J. Pro Tem., concur.

NOTE: The Honorable ROBERTO C. MONTIEL of the Santa Cruz County Superior Court, State of Arizona, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Ariz. Const. art. VI, § 3.