745 So.2d 954 (1999)
STATE of Florida, Petitioner,
v.
Bill BRADY, Jr., Respondent.
No. 91,951.
Supreme Court of Florida.
August 19, 1999.
Rehearing Denied December 27, 1999.
*955 Robert A. Butterworth, Attorney General, and Carmen F. Corrente, Assistant Attorney General, Daytona Beach, Florida, for Petitioner.
James B. Gibson, Public Defender, and James R. Wulchak, Chief, Appellate Division, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, Florida, for Respondent.
PER CURIAM.
We have for review the decision in Brady v. State, 700 So.2d 471 (Fla. 5th DCA 1997), based on a certified question of great public importance:
CAN A DEFENDANT BE CONVICTED OF ATTEMPTED MURDER OF BOTH THE INTENDED VICTIM AND AN INNOCENT BYSTANDER WHEN THE DEFENDANT HAD NO INTENT TO MURDER THE LATER, BUT THE LATTER IS INJURED DURING THE ATTEMPT ON THE INTENDED VICTIM?
We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution. For the reasons that follow we decline to answer the certified question, and we quash, in part, the decision of the Fifth District Court of Appeal.
Petitioner, Bill Brady, was charged with two counts of attempted first-degree murder and convicted of two counts of attempted second-degree murder. The evidence at trial reflected that Brady fired a single shot at Ricky Mack ("Mack"), intending to murder Mack. The bullet missed Mack, but hit an unintended victim, Toya Harrell ("Harrell"), injuring her in the hand. The incident in question occurred on New Year's Eve while Brady, Mack, and Harrell were in a nightclub.[1] According to Mack's testimony at trial, Mack approached Brady inside the club to ask him about a prior incident. After tapping Brady on the shoulder, Mack asked him why he had shot at Mack several days earlier. Brady responded, "Yeah n, what about it?" and then pulled out his gun and shot at Mack. The bullet missed Mack but hit Harrell in the hand. The jury convicted Brady of attempted second-degree murder of both Mack and Harrell.
On appeal, the Fifth District upheld Brady's conviction of attempted second-degree murder of Mack. However, the *956 court reduced Brady's conviction of attempted second-degree murder of Harrell to aggravated battery because it held that transferred intent could not be used to convict Brady of attempted murder of Harrell where there was no evidence of intent to kill her. Brady, 700 So.2d at 473.[2]

ATTEMPTED SECOND-DEGREE MURDER
We must look to the law of attempted second-degree murder to determine whether the two convictions here may stand. Although Florida recognizes the doctrine of transferred intent,[3] the issue of whether the doctrine applies to the crime *957 of attempted second-degree murder appears to be one of first impression.[4] The district court did not specifically discuss the issue, and the parties have cited no cases on the issue. Rather, it appears that the district court treated the case as if it involved convictions of attempted first-degree murder, a crime that requires proof of specific intent to kill.
In the instant case, had Harrell been killed rather than injured and the jury found an intent to kill Mack, under Florida law the doctrine of transferred intent clearly would apply to hold Brady responsible for his true culpability-murder. In that situation, transferred intent would connect the mens rea (intent to kill Mack) with the actus reus (physical act of killing Harrell) to form a completed crime. Here, however, Harrell was injured but not killed and, rather than find Brady guilty of attempted first-degree murder as charged, the jury found Brady guilty of attempted second-degree murder.
The offense of attempted second-degree murder does not require proof of the specific intent to commit the underlying act (i.e., murder). See Gentry v. State, 437 So.2d 1097 (Fla.1983). In Gentry, we held that the crime of attempted second-degree murder does not require proof of the specific intent to kill. Although the crime of attempt generally requires proof of a specific intent to commit the crime plus an overt act in furtherance of that intent, we reasoned: "If the state is not required to show specific intent to successfully prosecute the completed crime, it will not be required to show specific intent to successfully prosecute an attempt to commit that crime." Id. at 1099. To establish attempted second-degree murder of Harrell, the state had to show (1) that Brady intentionally committed an act which would have resulted in the death of Harrell except that someone prevented him from killing Harrell or he failed to do so, and (2) that the act was imminently dangerous to another and demonstrated a depraved mind without regard for human life. See Standard Jury Instructions in Criminal Cases, 697 So.2d 84, 90 (Fla.1997).
Based on Gentry and the evidence presented at trial as outlined above, it would appear that a jury could reasonably conclude that Brady intentionally committed *958 an act imminently dangerous to others, including Mack and Harrell, without regard for human life which would have resulted in death had the bullet fatally struck either Mack or Harrell. That is, by intentionally firing a deadly weapon in close proximity to both Mack and Harrell, the defendant intentionally committed an act that, had death resulted, would have constituted second-degree murder as to either Mack or Harrell. The attempt as to Mack appears clearer under evidence indicating that Mack was the intended target. However, because Harrell was in close proximity we also believe a jury could reasonably conclude, under the evidence, that the "act imminently dangerous to others" requirement of the second-degree murder statute would also be met by the proof submitted. Hence, there is no need to resort to the doctrine of transferred intent to the extent the facts in this case support a conviction of attempted second-degree murder of Mack and Harrell.
Our conclusion is strengthened by the jury instructions given by the trial judge in this cause. As part of the instruction on attempted first-degree murder, the court instructed the jury: "If the person aims or shoots a firearm at another person but instead misses and hits a different person, the law transfers the intent to shoot from the person who was aimed at to the person who was actually hit." However, no instruction on transferred intent was given as to the lesser included offenses, including the lesser offense of attempted second-degree murder. Of course, as we have noted above, we have not required specific intent to be proven for attempted second-degree murder. See Gentry, 437 So.2d at 1097. Thus, it appears that the jury convicted Brady on two counts of attempted second-degree murder without resort to the doctrine of transferred intent. Under our analysis and holding in Gentry that would be lawful.
Accordingly, we decline to answer the certified question, quash the district court's decision and remand for further proceedings consistent herewith.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD and PARIENTE, JJ., concur.
OVERTON, Senior Justice, concurs in result only.
NOTES
[1] The opinion below did not relay the following facts. Rather, these facts are taken directly from the record in this case.
[2] The court held that transferred intent could be used to transfer Brady's general intent to shoot Mack "to satisfy the `intentionally causing bodily harm' requirement of aggravated battery as against Harrell." Id. As for the attempted murder conviction, however, the court below relied on People v. Chinchilla, 52 Cal.App.4th 683, 60 Cal.Rptr.2d 761 (1997), in noting that had the issue been whether the "defendant attempted to murder multiple victims, then such intent is not subject to transfer but rather such intent should be independently evaluated as to each victim." Brady, 700 So.2d at 473. As one commentator notes:

If, without justification, excuse or mitigation, D with intent to kill A fires a shot which misses A but unexpectedly inflicts a non-fatal injury upon B, D is guilty of an attempt to commit murder,but the attempt was to murder A whom D was trying to kill and not B who was hit quite accidentally. And so far as the criminal law is concerned there is no transfer of this intent from one to the other so as to make D guilty of an attempt to murder B. Hence an indictment or information charging an attempt to murder B, or (under statute) an assault with intent to murder B, will not support a conviction if the evidence shows that the injury to B was accidental and the only intent was to murder A.
Rollin M. Perkins & Ronald N. Boyce, Criminal Law 925 (3d ed.1982) (footnote omitted); see also Lt.-Col. LeEllen Coacher & Capt. Libby Gallo, Criminal Liability: Transferred and Concurrent Intent, 44 A.F. L.Rev. 227 (1998).
A number of jurisdictions have rejected the doctrine of transferred intent in relation to the crime of attempted murder of the unintended victim. See, e.g., Jones v. State, 159 Ark. 215, 251 S.W. 690 (1923); People v. Chinchilla, 52 Cal.App.4th 683, 60 Cal. Rptr.2d 761, 765 (1997); People v. Calderon, 232 Cal.App.3d 930, 283 Cal.Rptr. 833 (1991); State v. Hinton, 227 Conn. 301, 630 A.2d 593, 602 (1993); Ford v. State, 330 Md. 682, 625 A.2d 984 (1993); State v. Williamson, 203 Mo. 591, 102 S.W. 519 (1907); State v. Mulhall, 199 Mo. 202, 97 S.W. 583 (1906); People v. Fernandez, 88 N.Y.2d 777, 650 N.Y.S.2d 625, 673 N.E.2d 910, 914 (1996); State v. Shanley, 20 S.D. 18, 104 N.W. 522 (1905). As several of these cases reason, transferred intent is inapplicable where no death results and the defendant is charged with attempted murder of the intended victim, because the defendant committed a completed crime at the time he shot at the intended victim regardless of whether any injury resulted to the unintended victim. See Chinchilla, 60 Cal.Rptr.2d at 764-65; Calderon, 283 Cal.Rptr. at 836-37; Fernandez, 650 N.Y.S.2d 625, 673 N.E.2d at 914.
The state cites to State v. Wilson, 313 Md. 600, 546 A.2d 1041 (1988) and State v. Gillette, 102 N.M. 695, 699 P.2d 626 (1985), in support of its argument that transferred intent applies to attempted murder of the unintended victim. Although relied upon by the state in this case, we note that the holding in Wilson was disapproved in a later decision by the Maryland Court of Appeals in Ford; see also Poe v. State, 341 Md. 523, 671 A.2d 501 (1996) (holding that transferred intent does not apply to attempted murder). In so holding, the court disapproved its earlier opinion in Wilson to the extent it held otherwise but, nevertheless, approved the result in Wilson because the evidence was sufficient to uphold the convictions for attempted murder as to each victim. See Ford, 625 A.2d at 999-1000. The court noted that because Wilson shot into an area where a number of persons were standing, it could be shown that he possessed the requisite intent for each individual victim, and therefore there was no need to resort to the doctrine of transferred intent. Id. at 1000. The Court of Special Appeals in Maryland, in Harvey v. State, 111 Md.App. 401, 681 A.2d 628 (1996), followed the reasoning in Ford in holding that transferred intent applies only where the defendant intends to kill one person and mistakenly kills an unintended victim. In other words, the court held that transferred intent does not apply to inchoate crimes where the defendant either misses or merely injures the unintended victim. Id. at 639-44.
[3] See Provenzano v. State, 497 So.2d 1177, 1180 (Fla.1986); Lee v. State, 141 So.2d 257, 259 (Fla.1962); Coston v. State, 139 Fla. 250, 190 So. 520 (1939); Hall v. State, 70 Fla. 48, 69 So. 692 (1915). As we recognized in Provenzano, "[t]he usual case involving the doctrine of transferred intent is when a defendant aims and shoots at A intending to kill him but instead misses and kills B." 497 So.2d at 1180. We noted, "as a matter of law, this original malice is transferred from the one against whom it was entertained to the person who actually suffered the consequence of the unlawful act." Id. at 1181; see also Coston, 139 Fla. at 254, 190 So. 520; Hall, 70 Fla. at 52, 69 So. 692; Pressley v. State, 395 So.2d 1175, 1177 (Fla. 3d DCA 1981); cf. Mordica v. State, 618 So.2d 301 (Fla. 1st DCA 1993) (recognizing doctrine of transferred intent but holding doctrine inapplicable to enhance severity of crime against unintended victim). We noted further that "[t]he law, as well as reason, prevents (defendant) from taking advantage of his own wrongdoing, or excusing himself when the unlawful act, if committed by (defendant), strikes down an unintended victim." Provenzano, 497 So.2d at 1181 (quoting Coston, 139 Fla. at 253-54, 190 So. at 522).
[4] Several jurisdictions have applied the doctrine to cases involving inchoate crimes such as attempted murder. See State v. Rodriguez-Gonzales, 164 Ariz. 1, 790 P.2d 287, 288 (1990) (attempted first-degree murder); People v. Hill, 276 Ill.App.3d 683, 213 Ill.Dec. 273, 658 N.E.2d 1294 (1995) (attempted first-degree murder); People v. Humes, 78 Ill. App.3d 255, 33 Ill.Dec. 797, 397 N.E.2d 130 (1979) (attempted murder, requiring specific intent to kill); Blanche v. State, 690 N.E.2d 709 (Ind.1998) (attempted murder); State v. Alford, 260 Iowa 939, 151 N.W.2d 573, 574 (1967) (assault with intent to commit murder), overruled on other grounds by State v. Bester, 167 N.W.2d 705 (Iowa 1969); State v. Thomas, 127 La. 576, 53 So. 868, 869 (1910) (willfully shooting at another with intent to commit murder); State v. Gillette, 102 N.M. 695, 699 P.2d 626 (1985) (attempted first-degree murder). In each of these cases, the crime for which the defendant was charged required proof of an intent to kill. As these cases reason, so long as there is evidence of an intent to kill, it makes no difference that someone other than the intended victim was killed or injured.