768 So.2d 22 (2000)
Charles E. BELL, Appellant,
v.
STATE of Florida, Appellee.
No. 1D98-3035.
District Court of Appeal of Florida, First District.
August 7, 2000.
Rehearing Denied September 15, 2000.
*24 Nancy A. Daniels, Public Defender; Michael J. Minerva, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Bart Schneider, Assistant Attorney General, Tallahassee, for Appellee.
BENTON, J.
Charles Bell appeals five convictions for attempted first degree murder on grounds the evidence does not support the convictions. We affirm three convictions, reverse two convictions with directions that convictions for attempted second degree murder be substituted, and remand for resentencing.
In the early morning hours of April 26, 1997, Mr. Bell and Antonio Anderson returned to a fraternity party at a restaurant from which they had been ejected a few minutes before. Upon their return, Mr. Anderson sought refund of a cover charge, which gave rise to an argument with a fraternity brother, Leslie "Trey" Miller. Mr. Miller then struck the first and only blow, knocking Mr. Anderson to the ground.
As Mr. Anderson fell, Mr. Bell, exclaiming, "Fuck nigger!" pulled a .45 caliber semi-automatic handgun from his waistband, and fired two shots at Mr. Miller, hitting him in the abdomen and in the leg. The bullet that grazed Mr. Miller's leg also hit Tracy Holton, fracturing Mr. Holton's tibia. After shooting Mr. Miller (and Mr. Holton), Mr. Bell paused, then fired two more shots. One of these shots hit D'Juan Harris in the upper back near his left shoulder, damaging his spinal cord and leaving him partially paralyzed. The other hit Brian Armstrong in the head and caused severe brain damage.
Messrs. Bell and Andersonthe latter had by then regained his feetstarted to leave. But Mr. Anderson fell again on the sidewalk outside the restaurant. At this juncture, someone threw a beer bottle at them and Mr. Bell fired two more shots in the direction from which the bottle had come. This fusillade hit Olutokunbo Akiode, who had not thrown the bottle, in the thumb and in the leg.
Mr. Bell filed a motion for judgment of acquittal at the conclusion of the state's case, acknowledging that he shot each of the victims, but arguing that he had not intended to kill anybody. In ruling on a motion for judgment of acquittal, the trial court must
determine whether there is prima facie inconsistency between (a) the evidence, viewed in the light most favorable to the State and (b) the defense theory or theories. If there is such inconsistency, then the question is for the finder of fact to resolve. The trial court's finding in this regard will be reversed on appeal only where unsupported by competent substantial evidence.

Orme v. State, 677 So.2d 258, 262 (Fla. 1996). The law is clear that a trial court *25 should rarely, if ever, grant a motion for judgment of acquittal on the issue of intent. King v. State, 545 So.2d 375 (Fla. 4th DCA 1989). This is because proof of intent usually consists of the surrounding circumstances of the case. A directed verdict is not proper where reasonable persons might differ as to facts tending to prove ultimate facts or inferences to be drawn from the facts. Snipes v. State, 154 Fla. 262, 17 So.2d 93 (1944).
Washington v. State, 737 So.2d 1208, 1215-16 (Fla. 1st DCA 1999). The question now is whether the trial court erred in denying the motion for judgment of acquittal in its entirety, based on the evidence presented in the state's case-in-chief. See Walker v. State, 604 So.2d 475, 476-77 (Fla.1992); State v. Pennington, 534 So.2d 393, 396 (Fla.1988).
We must first decide whether the evidence was sufficient to prove premeditation as to each victim beyond a reasonable doubt. Circumstantial evidence is insufficient to prove premeditation if it is consistent with reasonable inferences other than premeditation. See Fisher v. State, 715 So.2d 950, 952 (Fla.1998); Cochran v. State, 547 So.2d 928, 930 (Fla.1989).
Premeditation is the essential element which distinguishes first-degree murder from second-degree murder. Anderson v. State, 276 So.2d 17 (Fla.1973). Premeditation is more than a mere intent to kill; it is a fully formed conscious purpose to kill. This purpose to kill may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act. Sireci v. State, 399 So.2d 964, 967 (Fla.1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). Whether or not the evidence shows a premeditated design to commit a murder is a question of fact for the jury which may be established by circumstantial evidence. Preston v. State, 444 So.2d 939, 944 (Fla.1984).
Wilson v. State, 493 So.2d 1019, 1021 (Fla. 1986). Circumstantial evidence from which premeditation may be inferred may include:
the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it insofar as the life of the victim is concerned.
Jackson v. State, 575 So.2d 181, 186 (Fla. 1991) (quoting Sireci v. State, 399 So.2d 964, 967 (Fla.1981)); see also Kearse v. State, 662 So.2d 677, 682 (Fla.1995); Hartman v. State, 728 So.2d 782, 785 (Fla. 4th DCA 1999).
To prove premeditation, circumstantial evidence must be clearly inconsistent with a defendant's hypothesis of innocence. See Fowler v. State, 492 So.2d 1344, 1347-48 (Fla. 1st DCA 1986). "Where the State's proof fails to exclude a reasonable hypothesis that the homicide [or an attempt] occurred other than by premeditated design, a verdict of first-degree murder cannot be sustained." Randall v. State, 760 So.2d 892 (Fla.2000); see Coolen v. State, 696 So.2d 738, 742 (Fla.1997). On the other hand, "[t]he State need not `rebut conclusively every possible variation' of events, but need only `introduce competent evidence which is inconsistent with the defendant's theory of defense.'" Washington, 737 So.2d at 1215 (quoting State v. Law, 559 So.2d 187, 189 (Fla.1989)).

Evidence of Premeditation Sufficient
Taking the evidence in the light most favorable to the state, Mr. Bell was upset when he left the restaurant the first time. He returned armed with a .45 caliber semi-automatic weapon, the most powerful *26 handgun in popular use, and began firing at Mr. Miller before Mr. Anderson even hit the ground. He was fully prepared to use the weapon in that fashion. In order to fire the gun that quickly, a shell had to be in the chamber and the safety had to be off. As he fired, he hurled an insult at his intended victim, his compeer's assailant. See, e.g., Buckner v. State, 714 So.2d 384, 387 (Fla.1998) (deeming the defendant's words before firing his last three shots ["Mother fucker, you ain't had enough?"] evidence of premeditation).
After shooting Mr. Miller twice (and hitting Mr. Holton, as well), Mr. Bell paused, before shooting Mr. Armstrong and Mr. Harris. Mr. Bell had sufficient time to reflect on the consequences of aiming a pistol at somebody and firing, especially since he had felled two victims by this time. See Millian v. State, 758 So.2d 1271, 1274-75 (Fla. 4th DCA 2000) (finding that evidence of a pause during a shooting supports a finding of premeditation); see also Brooks v. State, 762 So.2d 879, 896 (Fla.2000) (finding that a continuing attack may be evidence of premeditation); Childers v. State, 713 So.2d 431, 433 (Fla. 2d DCA 1998) (same). When Mr. Bell resumed firing, he shot Mr. Armstrong in the head and Mr. Harris in the upper torso, hitting his spine and paralyzing him. Although neither man died, the jury had evidence from which it could conclude that Mr. Bell had formed a conscious intent to kill them both. The bullet that cost Mr. Miller his spleen also tore through his diaphragm.
Mr. Bell later testified that, when he shot Messrs. Miller, Armstrong and Harris, he intended only to fire warning shots over the heads of the crowd out of concern for Mr. Anderson's safety. But, when fired, the pistol recoiled so that the shooter had to lower the muzzle to fire again at the same target. Given the serious gunshot wounds each of these victims received to or near vital organs, this hypothesis does not bear close scrutiny. The evidence was sufficient for the jury to reject the defense theory beyond a reasonable doubt. Mr. Bell took aim at Mr. Miller twice. In order to shoot Mr. Miller a second time, and in order to shoot Messrs. Armstrong and Harris, Mr. Bell had to lower the nozzle and take aim anew.

Evidence of Premeditation Insufficient
By the time the shot or shots that hit Mr. Akiode were fired, Messrs. Bell and Anderson had begun their retreat. Mr. Bell was helping Mr. Anderson to his feet when a beer bottle landed nearby. He turned and fired hitting Mr. Akiode in the thumb and in the leg. It was not clear whether one or both of the bullets caused these wounds. As far as the evidence showed, a single shot caused both injuries and the other shot did not hit anybody.
The evidence does not refute the hypothesis that Mr. Bell was not guilty of attempting the premeditated murder of Mr. Akiode because he simply acted in haste, reflexively and without forethought, or because he discharged the gun only to forestall pursuit while he and Mr. Anderson made their escape, but with no intention to effect anybody's death. The evidence cannot be said to be inconsistent with this hypothesis beyond a reasonable doubt. The state did not prove that Mr. Bell took aim at Mr. Akiode's vital organs or that he formed the intent to kill somebody for throwing a beer bottle at him.
The evidence was insufficient to prove that Mr. Bell attempted the premeditated murder of Tracy Holton, the bystander who was hit in the leg by one of the bullets that hit Mr. Miller. Mr. Holton was the only victim who did not belong to the fraternity. The jury instructions purported to authorize the jury to find that, if one of the bullets intended for (and actually hitting) Mr. Miller also struck Mr. Holton, firing the bullet constituted attempted first degree murder not only of Mr. Miller, but also of Mr. Holton. A similar situation arose in State v. Brady, 745 So.2d 954, 955 (Fla.1999), where

*27 Brady ... shot at Mack. The bullet missed Mack but hit Harrell in the hand. The jury convicted Brady of attempted second-degree murder of both Mack and Harrell.
On these facts, the supreme court found "no need to resort to the doctrine of transferred intent," id. at 958, to uphold Brady's convictions for attempted second-degree murder, explaining that
a jury could reasonably conclude that Brady intentionally committed an act imminently dangerous to others, including Mack and Harrell, without regard for human life which would have resulted in death had the bullet fatally struck either Mack or Harrell. That is, by intentionally firing a deadly weapon in close proximity to both Mack and Harrell, the defendant intentionally committed an act that, had death resulted, would have constituted second-degree murder as to either Mack or Harrell. The attempt as to Mack appears clearer under evidence indicating that Mack was the intended target. However, because Harrell was in close proximity we also believe a jury could reasonably conclude, under the evidence, that the "act imminently dangerous to others" requirement of the second-degree murder statute would also be met by the proof submitted.
Brady, 745 So.2d at 957-58. On this basis, a conviction for attempted second-degree murder of Mr. Holton could be upheld in the present case. See Gentry v. State, 437 So.2d 1097, 1099 (Fla.1983) (requiring proof of only general intent for attempted second-degree murder). But the offense against Mr. Holton of which Mr. Bell was actually convictedattempted first-degree murdercan only stand if the intent to murder Mr. Miller is "transferred" to Mr. Holton.
This is presumably why the prosecution requested an instruction on transferred intent. Over defense objection, the trial judge instructed the jury: "Now, if a person has a premeditated design to kill one person and in attempting to kill that person actually harms another person, then the person actually harmed was the subject of a premeditated design to kill." Without such transferred intent, the evidence was insufficient to prove Mr. Bell guilty of the attempted first-degree murder of Mr. Holton, who played no part in the altercation before being hit in the shin by a bullet intended for (and actually hitting) Mr. Miller, who had just slugged Mr. Bell's companion.
The Brady court did not need to decide and expressly refrained from deciding any question concerning attempted first degree murder. But it did observe that "the crime of attempt generally requires proof of a specific intent to commit the crime plus an overt act in furtherance of that intent," 745 So.2d at 957, and described "attempted first-degree-murder [as] a crime that requires proof of specific intent to kill." Id. Our supreme court went on to say:
As one commentator notes:
If, without justification, excuse or mitigation, D with intent to kill A fires a shot which misses A but unexpectedly inflicts a non-fatal injury upon B, D is guilty of an attempt to commit murder,but the attempt was to murder A whom D was trying to kill and not B who was hit quite accidentally. And so far as the criminal law is concerned there is no transfer of this intent from one to the other so as to make D guilty of an attempt to murder B. Hence an indictment or information charging an attempt to murder B, or (under statute) an assault with intent to murder B, will not support a conviction if the evidence shows that the injury to B was accidental and the only intent was to murder A.
Rollin M. Perkins & Ronald N. Boyce, Criminal Law 925 (3d ed.1982) (footnote omitted); see also Lt-Col. LeEllen Coacher & Capt. Libby Gallo, Criminal Liability: Transferred and Concurrent Intent, 44 A.F. L.Rev. 227 (1998).

*28 A number of jurisdictions have rejected the doctrine of transferred intent in relation to the crime of attempted murder of the unintended victim. See, e.g., Jones v. State, 159 Ark. 215, 251 S.W. 690 (1923); People v. Chinchilla, 52 Cal. App.4th 683, 60 Cal.Rptr.2d 761, 765 (1997); People v. Calderon, 232 Cal. App.3d 930, 283 Cal.Rptr. 833 (1991); State v. Hinton, 227 Conn. 301, 630 A.2d 593, 602 (1993); Ford v. State, 330 Md. 682, 625 A.2d 984 (1993); State v. Williamson, 203 Mo. 591, 102 S.W. 519 (1907); State v. Mulhall, 199 Mo. 202, 97 S.W. 583 (1906); People v. Fernandez, 88 N.Y.2d 777, 650 N.Y.S.2d 625, 673 N.E.2d 910, 914 (1996); State v. Shanley, 20 S.D. 18, 104 N.W. 522 (1905). As several of these cases reason, transferred intent is inapplicable where no death results and the defendant is charged with attempted murder of the intended victim, because the defendant committed a completed crime at the time he shot at the intended victim regardless of whether any injury resulted to the unintended victim. See Chinchilla, 60 Cal.Rptr.2d at 764-65; Calderon, 283 Cal.Rptr. at 836-37; Fernandez, 650 N.Y.S.2d 625, 673 N.E.2d at 914.
The state cites to State v. Wilson, 313 Md. 600, 546 A.2d 1041 (1988) and State v. Gillette, 102 N.M. 695, 699 P.2d 626 (1985), in support of its argument that transferred intent applies to attempted murder of the unintended victim. Although relied upon by the state in this case, we note that the holding in Wilson was disapproved in a later decision by the Maryland Court of Appeals in Ford; see also Poe v. State, 341 Md. 523, 671 A.2d 501 (1996) (holding that transferred intent does not apply to attempted murder). In so holding, the court disapproved its earlier opinion in Wilson to the extent it held otherwise but, nevertheless, approved the result in Wilson because the evidence was sufficient to uphold the convictions for attempted murder as to each victim. See Ford, 625 A.2d at 999-1000. The court noted that because Wilson shot into an area where a number of persons were standing, it could be shown that he possessed the requisite intent for each individual victim, and therefore there was no need to resort to the doctrine of transferred intent. Id. at 1000. The Court of Special Appeals in Maryland, in Harvey v. State, 111 Md.App. 401, 681 A.2d 628 (1996), followed the reasoning in Ford in holding that transferred intent applies only where the defendant intends to kill one person and mistakenly kills an unintended victim. In other words, the court held that transferred intent does not apply to inchoate crimes where the defendant either misses or merely injures the unintended victim. Id. at 639-44.
Brady, 745 So.2d at 956 n. 2. We share these views and those of the Fifth District when Brady's case was before it and it said "that if the issue is whether the defendant attempted to murder multiple victims, then such specific intent is not subject to transfer but rather such intent should be independently evaluated as to each victim." Brady v. State, 700 So.2d 471, 473 (Fla. 5th DCA 1997). As do we, the Fifth District found the decisions in People v. Chinchilla, 52 Cal.App.4th 683, 60 Cal.Rptr.2d 761, 765 (1997) and People v. Czahara, 203 Cal.App.3d 1468, 250 Cal.Rptr. 836, 840 (1988) persuasive. But see People v. Rothrock, 21 Cal.App.2d 116, 68 P.2d 364, 366 (1937).
In accordance with section 924.34, Florida Statutes (1995), which provides that, when an "appellate court determines that the evidence does not prove the offense for which the defendant was found guilty but does establish his guilt of a lesser statutory degree of the offense ..., the appellate court shall reverse the judgment and direct the trial court to enter judgment for the lesser degree of the offense ...," we reverse the convictions for attempted first degree murder of Messrs. Holton and Akiode, and remand with directions that the trial court enter judgment for attempted second-degree murder as to both.
*29 In order that like cases be treated alike, we also certify as being of great public importance the following question:
DOES THE CRIME OF ATTEMPTED SECOND-DEGREE MURDER EXIST IN FLORIDA?
Hagans v. State, 25 Fla. L. Weekly D595, ___ So.2d ___, 2000 WL 242263 (Fla. 1st DCA Mar.6, 2000) (certifying same question); Rivero v. State, 752 So.2d 1244, 1245 (Fla. 3d DCA 2000) (same); Brown v. State, 733 So.2d 598, 599 (Fla. 5th DCA) (same), review granted, 744 So.2d 452 (Fla. 1999).
Affirmed in part, reversed in part, and remanded for further proceedings.
DAVIS and PADOVANO, JJ., CONCUR.