The State appeals from the reversal by the Court of Criminal Appeals of Christopher Cockrell's conviction for attempted murder. We affirm.
The following statement of the facts was taken from the opinion by the Court of Criminal Appeals:
 "On October 1, 2001, following a previous disagreement over the theft of some money from Carlos Ivey's car, Cockrell was seen hiding in some bushes next to the neighborhood grocery store. Ivey pulled up in his car to a stop sign close *Page 175 
to the store. Cockrell, following Ivey's car, ran from the bushes down the street. Cockrell fired several shots into Ivey's car. One of the shots struck 12-year-old Jerome Fails, who was standing on his grandmother's front porch eating a sucker, in the head. Although Jerome survived, he suffered severe brain damage and [is] unable to move or talk.
 "Cockrell testified that Ivey fired at him first, that he fired at Ivey in self-defense, and that he did not intend to shoot Jerome Fails."
Cockrell v. State, 890 So.2d 168, 169 (Ala.Crim.App. 2003).
Cockrell was charged with the attempted murder of Fails, the unintended victim. Cockrell was not charged with the attempted murder of Ivey, the intended victim. The jury found Cockrell guilty of attempted murder, and the trial court sentenced Cockrell to life imprisonment. Cockrell appealed his conviction to the Court of Criminal Appeals. The Court of Criminal Appeals reversed Cockrell's conviction, holding that there was insufficient evidence to support a conviction of attempted murder as to Fails because there was no evidence indicating that Cockrell intended to murder Fails. The Court of Criminal Appeals rejected the State's argument that the doctrine of transferred intent applied to Cockrell's case; that court stated that the doctrine was usually reserved for crimes of general, as opposed to specific, intent, e.g., assault. According to the Court of Criminal Appeals, attempted murder is a specific-intent crime, and a conviction for attempted murder cannot be obtained unless the accused intended to murder the person who was actually harmed. The Court of Criminal Appeals remanded the case to the trial court for that court to sentence Cockrell for the offense of first-degree assault with a deadly weapon, a lesser offense included within the offense of attempted murder.
The State petitioned this Court for a writ of certiorari on the basis that the issue presented in this case is a question of first impression in this Court. This Court granted the writ to address the issue whether transferred intent is applicable where the defendant has been charged with attempted murder but the actual victim was not the victim the defendant intended to kill.
Cockrell does not dispute that the doctrine of transferred intent applies to a murder charge. Cockrell concedes that he intended to murder Ivey. Cockrell committed an overt act toward murdering Ivey by shooting into Ivey's automobile. During that act, Fails was injured by one of the bullets intended for Ivey. However, the issue to be decided, which is one of first impression to this Court, is whether the doctrine of transferred intent is applicable to an attempted-murder charge.
The Court of Criminal Appeals relied on a case decided by the Supreme Court of California, California v. Bland,28 Cal.4th 313, 48 P.3d 1107, 121 Cal.Rptr.2d 546 (2002), when formulating its holding that transferred intent does not apply to the offense of attempted murder. The Court in Bland interpreted the California murder statute to mean that "[t]o be guilty of murder, the defendant must intend to kill the alleged victim, not someone else." 28 Cal.4th at 328, 48 P.3d at 1117, 121 Cal.Rptr.2d at 558. The California court used the theory of concurrent intent — "[w]here the means employed to commit the crime against a primary victim create a zone of harm around that victim, the fact finder can reasonably infer that the defendant intended that harm to all who are in the anticipated zone" — to uphold Bland's conviction, because Bland's victim fell within *Page 176 
that zone. 28 Cal.4th at 330, 48 P.3d at 1118, 121 Cal.Rptr.2d at 560.
The State contends that the Court of Criminal Appeals' reliance on Bland is misplaced because California's murder statute, unlike § 13A-6-2, Ala. Code 1975, does not include language incorporating the doctrine of transferred intent into the offense. The California murder statute, § 189, Cal.Penal Code (2004), reads:
 "All murder which is perpetrated by means of a destructive device or explosive, a weapon of mass destruction, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 288, 288a, or 289, or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder in the first degree."
Section 13A-6-2, Ala. Code 1975, provides:
"(a) A person commits the crime of murder if:
 "(1) With the intent to cause the death of another person, he causes the death of that person or of another person."
(Emphasis added.) Thus, in contrast to the California murder statute, the doctrine of transferred intent has been codified into Alabama's murder statute. In Carter v. State,843 So.2d 812, 814 (Ala. 2002), this Court stated:
 ". . . Alabama appellate courts have repeatedly held that `the defendant's liability for the unintended consequences of a criminal act is in the same degree as it would have been had his aim been true and the intended target been injured or killed.' Carter[v. State, 843 So.2d 807, 810 (Ala.Crim.App. 2000)] (opinion on remand). . . . Section 13A-6-2(a)(1), Ala. Code 1975, reiterates the doctrine [of transferred intent] in its definition of murder. The statute provides in pertinent part, that `[a] person commits the crime of murder if . . . [w]ith the intent to cause the death of that person or another person, he causes the death of that person or of another person. . . .' (Emphasis added [in Carter])."
See also Mathis v. State, 497 So.2d 231, 232 (Ala.Crim.App. 1986).
This distinction is problematic. Cases taking a similar view to the one taken in California (rejecting the doctrine of transferred intent when the charge is attempted murder) can be found in jurisdictions, like Alabama, where the doctrine of transferred intent has been codified into the statute defining the offense of murder. See, e.g., People v. Fernandez,88 N.Y.2d 777, 783, 673 N.E.2d 910, 913-14, 650 N.Y.S.2d 625, 628-29
(1996) ("[B]ecause an attempt charge always involves an uncompleted crime, the transferred intent doctrine is ordinarily not implicated. . . . Since the focus of the doctrine of transferred intent under Penal Law § 125.25(1) is the identity of the person whose death actually resulted, this doctrine has no relevance in an attempt case, where an actual death is not an element."); Ramsey v. State, 56 P.3d 675, 682 (Alaska Ct.App. 2002) ("Accordingly, we conclude that Judge Wood erred in instructing the jury and allowing the State to argue that it could convict Ramsey of attempted murder of S.M. if Ramsey intended to kill Palacios and simultaneously injured S.M. We conclude that the proper instruction would have required the jury to find Ramsey had the specific intent to kill S.M. before it could *Page 177 
convict Ramsey of the attempted murder of S.M."); and State v.Hinton, 227 Conn. 301, 315-18, 630 A.2d 593, 601-02 (1993) (applying the rule of lenity in construing a criminal statute and concluding that it was not clear that the legislature intended to apply the doctrine of transferred intent to an attempt crime whenever the statute defining the crime allows the transfer of intent for the completed offense).
A Florida District Court of Appeals in Bell v. State,768 So.2d 22, 28 (Fla.Dist.Ct.App. 2000), provides a helpful collection of authorities rejecting the applicability of the doctrine of transferred intent to the offense of attempted murder of an unintended victim, as follows:
 "A number of jurisdictions have rejected the doctrine of transferred intent in relation to the crime of attempted murder of the unintended victim. See, e.g., Jones v. State, 159 Ark. 215, 251 S.W. 690
(1923); People v. Chinchilla, 52 Cal.App.4th 683, 60 Cal.Rptr.2d 761, 765 (1997); People v. Calderon, 232 Cal.App.3d 930, 283 Cal.Rptr. 833 (1991); State v. Hinton, 227 Conn. 301, 630 A.2d 593, 602 (1993); Ford v. State, 330 Md. 682, 625 A.2d 984 (1993); State v. Williamson, 203 Mo. 591, 102 S.W. 519
(1907); State v. Mulhall, 199 Mo. 202, 97 S.W. 583
(1906); People v. Fernandez, 88 N.Y.2d 777, 650 N.Y.S.2d 625, 673 N.E.2d 910, 914 (1996); State v. Shanley, 20 S.D. 18, 104 N.W. 522 (1905)."
The Bell court continued:
 "As several of these cases reason, transferred intent is inapplicable where no death results and the defendant is charged with attempted murder of the intended victim, because the defendant committed a completed crime at the time he shot at the intended victim regardless of whether any injury resulted to the unintended victim. See Chinchilla, 60 Cal.Rptr.2d at 764-65; Calderon, 283 Cal.Rptr. at 836-37; Fernandez, 650 N.Y.S.2d 625, 673 N.E.2d at 914."
768 So.2d at 28 (emphasis added).
Professor Perkins in his treatise on criminal law states:
 "If, without justification, excuse or mitigation D with intent to kill A fires a shot which misses A but unexpectedly inflicts a non-fatal injury upon B, D is guilty of an attempt to commit murder — but the attempt was to murder A whom D was trying to kill and not B who was hit quite accidentally. And so far as the criminal law is concerned there is no transfer of this intent from one to the other so as to make D guilty of an attempt to murder B. Hence, an indictment or information charging an attempt to murder B, or (under statute) an assault with intent to murder B, will not support a conviction if the evidence shows that the injury to B was accidental and the only intent was to murder A."
Rollin M. Perkins, Perkins on Criminal Law 826 (2d ed. 1969) (footnote omitted). In Harvey v. State, 111 Md.App. 401, 432,681 A.2d 628, 644 (1996), the court, after quoting the foregoing passage from Professor Perkins's treatise, concluded:
 "Consummated criminal homicide is, in the last analysis, sui generis. Many of its complexities, such as the transferred intent doctrine, simply do not travel well to other criminal climes. There is, moreover, no reason of necessity for making the transferred intent doctrine travel to climes other than that of actual, consummated criminal homicides. For the rest, the actuality of the real mens rea
properly combined with its precisely related actus reus is enough to establish guilt at the appropriate level without any necessary resort to an intention-shifting legal fiction. The inchoate criminal *Page 178 
homicides are in no need of such a device."
Other jurisdictions, however, have applied the doctrine of transferred intent to an attempted murder. The Arizona Court of Appeals reached such a conclusion in State v.Rodriguez-Gonzales, 164 Ariz. 1, 790 P.2d 287 (Ariz.Ct.App. 1990). Rodriguez-Gonzales shot outside a local bar with the intent to kill two security guards. Bullets struck and injured the security guards as well as another bystander, but no one was killed. Rodriguez-Gonzales was convicted of the attempted murder of all three victims. Arizona's attempt statute, like Alabama's, in addition to the element of intent, requires only that the offender make an overt act toward the commission of the offense. Arizona also has a transferred-intent statute that allows intent to be transferred from one victim to another if the resulting harm to the unintended victim is the same type of harm contemplated for the intended victim. The court stated: "Under our statute, criminal intent `follows the bullet' from anticipated to unanticipated victims. . . . Intent to murder istransferable to each unintended victim once there is an attemptto kill someone." 164 Ariz. at 2, 790 P.2d at 288 (emphasis added).
Courts in Minnesota, Illinois, Nevada, Indiana, and New Mexico, applying murder statutes comparable to Alabama's, have reached a result similar to the result reached by the Arizona Court of Appeals. See Minnesota v. Ford, 539 N.W.2d 214, 229 (Minn. 1995) (holding that the trial court properly allowed the application of the doctrine of transferred intent in an attempted-murder case); Illinois v. Hill, 276 Ill.App.3d 683,688, 658 N.E.2d 1294, 1298, 213 Ill.Dec. 273, 276 (1995) (noting that "the doctrine of transferred intent is applicable in attempt[ed] murder cases), appeal denied, 166 Ill.2d 546,664 N.E.2d 644, 216 Ill.Dec. 7 (1996); Ochoa v. Nevada,115 Nev. 194, 199-201, 981 P.2d 1201, 1205 (1999) (holding that the doctrine of transferred intent was appropriate to support an attempted-murder conviction where the unintended victim was shot but not killed and the intended victim was killed); Tucker v.Indiana, 443 N.E.2d 840, 842 (Ind. 1983) (holding that intent was properly transferred from the person against whom it was directed to the person actually injured to support a jury charge on attempted voluntary manslaughter); New Mexico v. Gillette,102 N.M. 695, 704-05, 699 P.2d 626, 634-35 (N.M.Ct.App. 1985),rev'd on other grounds, Gillette v. Tansy, 17 F.3d 308 (10th Cir. 1994) (holding that appellant's intent to poison a mother was transferred to the children in the family who were also exposed to the poison so as to support a charge of attempted murder of the children).
The South Carolina Supreme Court in State v. Fennell,340 S.C. 266, 276, 531 S.E.2d 512, 518 (2000), rejected the Maryland case of Harvey v. State and similar cases, holding that
 "[a] person who, acting with malice, unleashes a deadly force in an attempt to kill or injure an intended victim should anticipate that the law will require him to answer fully for his deeds when that force kills or injures an unintended victim. Accordingly, we hold that the doctrine of transferred intent may be used to convict a defendant of ABIK [assault and battery with intent to kill] when the defendant kills the intended victim and also injures an unintended victim."
(Emphasis added.)
The reprehensibility of a malicious intent to kill an individual amply justifies the application of the doctrine of transferred intent when an innocent bystander dies at *Page 179 
the hand of the perpetrator. State v. Fennell well illustrates the force behind the rationale of those cases holding that the doctrine of transferred intent applies to the offense of attempted murder — it draws upon the moral outrage that justifies expanding the applicability of the doctrine of transferred intent to an attempt that merely injures the innocent bystander, calling that offense attempted murder. The court in Fennell justified its conclusion by noting that the wrongdoer "should anticipate that the law will require him to answer fully for his deeds."340 S.C. at 276, 531 S.E.2d at 518.
On the other hand, the logic of the Maryland court in Harveyv. State underlies the rationale of those cases rejecting the applicability of the doctrine of transferred intent to the offense of attempted murder. As previously noted, the court inHarvey viewed consummated murder as sui generis or unique and pointed out that the offense of attempted murder does not require the fiction of transferred intent in order to secure a conviction. Similarly, as the Florida court observed in Bell v.State,"the defendant committed a completed crime at the time he shot at the intended victim regardless of whether any injury resulted to the unintended victim." 768 So.2d at 28.
The Alaska Court of Appeals in Ramsey v. State criticized the application of the doctrine of transferred intent to an attempted-murder case by pointing out that under such a rule, a defendant could be found guilty of attempting to kill everyone in a crowded building when a defendant fires multiple shots at the intended victim. The court reasoned:
 "The jury certainly found that Ramsey intended to cause the death of Palacios [the intended victim]. And because his actions would have placed almost any reasonable person in the school in fear of serious physical injury, it is hard to say where the State's attempted murder theory would stop. A defendant can be found guilty of attempted murder whether or not he actually injures his intended victim. Therefore, the State's argument, carried to its logical extension, would allow it to convict Ramsey of the attempted murder of everyone in the building."
56 P.3d at 681-82.
However, if that result is the natural consequence of the legislative scheme, it is not within the province of this court to reject that scheme on grounds of differing views as to sound public policy. See Art. III, § 43, Ala. Const. 1901, providing, in pertinent part, "[T]he judicial [branch of government] shall never exercise the legislative and executive powers, or either of them. . . ." Whether Alabama's legislative scheme embraces application under the attempt statute (§ 13A-4-2, Ala. Code 1975) of the doctrine of transferred intent as codified in § 13A-6-2 is the crux of the question.
Section 13A-4-2 provides that "[a] person is guilty of an attempt to commit a crime if, with the intent to commit aspecific offense, he does any overt act towards the commission of such offense." In Free v. State, 455 So.2d 137, 148
(Ala.Crim.App. 1984), the Court of Criminal Appeals, discussing the offense of attempted murder, stated:
 "It is well settled that intent may be presumed from the use of a deadly weapon and the character of the assault. Chaney [v. State, 417 So.2d 625
(Ala.Crim.App. 1982)]. However, this evidence must be sufficient to allow the jury to conclude, by fair inference, that the appellant was shooting at the person (named in the indictment) in particular with the intent to murder him." *Page 180 
Under this formulation, Cockrell could clearly have been indicted for the attempted murder of Ivey.
The question before us is whether the attempt statute evidences a legislative intent to apply the doctrine of transferred intent to an attempted crime when the statute defining the crime allows the transfer of intent for the completed offense. If such legislative intent can be found, then the doctrine of transferred intent is implicit in an attempted murder and Cockrell can be charged with attempted murder as to Fails. If it cannot be found, Cockrell's conviction must be reversed.
The Connecticut attempt statute at issue in State v.Hinton[1] required that the defendant act "with the kind of mental state required for commission of the crime. . . ." Conn. Gen.Stat. § 53a-49. In Hinton, the court, after quoting the foregoing from the attempt statute, concluded, "It is not clear from this language whether the legislature meant the doctrine of transferred intent to apply to an attempt crime whenever the statute defining the crime allows the transfer of intent for the completed offense." 227 Conn. at 316,630 A.2d at 601.
Section 13A-4-2, the Alabama attempt statute, refers to "the intent to commit a specific offense" (emphasis added). This reference is comparable to the reference to "the kind of mental state required for commission of the crime." Alabama's murder statute, § 13A-6-2(a), Ala. Code 1975, provides that "[a] person commits the crime of murder if . . . [w]ith the intent to cause the death of another person, he causes the death of that personor of another person." The phrase "another person" appears twice in the foregoing quote from § 13A-6-2(a). The only reference to intent in § 13A-6-2(a) is tied directly to the first reference to "another person," providing "[w]ith the intent to cause the death of another person." This first reference to "another person" clearly applies to the intended victim. The second reference to the death of "another person," clearly applies to a person other than the intended victim. Section13A-6-2(a) does not link the reference to "another person" with intent in the context of an unintended victim because, indeed, it could not possibly be so linked. Any "intent" as to the innocent victim is nonexistent; the death of the innocent victim is anunintended result. Intent is imputed as the result of a legal fiction adopted to prevent wrongdoers from escaping the consequences of killing without specific intent by the fluke of bad aim.
In applying this feature of Alabama's murder statute to the attempt statute we are guided by rules governing the construction of criminal statutes. We recently restated those rules in Exparte Bertram, 884 So.2d 889 (Ala. 2003):
 "`"[I]t is well established that criminal statutes should not be `extended by construction.'"' Ex parte Mutrie, 658 So.2d 347, 349 (Ala. 1993) (quoting Ex parte Evers, 434 So.2d 813, 817 (Ala. 1983), quoting in turn Locklear v. State, 50 Ala.App. 679, 282 So.2d 116 (1973)).
 "`A basic rule of review in criminal cases is that criminal statutes are to be strictly construed in favor of those persons sought to be subjected to their operation, i.e., defendants. Schenher v. State, 38 Ala.App. 573, 90 So.2d 234, cert. denied, 265 Ala. 700, 90 So.2d 238 (1956).
 "`Penal statutes are to reach no further in meaning than their words. *Page 181 Fuller v. State, 257 Ala. 502, 60 So.2d 202 (1952).
 "`One who commits an act which does not come within the words of a criminal statute, according to the general and popular understanding of those words, when they are not used technically, is not to be punished thereunder, merely because the act may contravene the policy of the statute. Fuller v. State, supra, citing [Young v. State], 58 Ala. 358
(1877).
 "`No person is to be made subject to penal statutes by implication and all doubts concerning their interpretation are to predominate in favor of the accused. Fuller v. State, supra.'
 "Clements v. State, 370 So.2d 723, 725 (Ala. 1979) (quoted in whole or in part in Ex parte Murry, 455 So.2d 72, 76 (Ala. 1984), and in Ex parte Walls, 711 So.2d 490, 494 (Ala. 1997)) (emphasis added).
 "`"Statutes creating crimes are to be strictly construed in favor of the accused; they may not be held to apply to cases not covered by the words used. . . ." United States v. Resnick, 299 U.S. 207, 209, 57 S.Ct. 126, 127, 81 L.Ed. 127 (1936). See also, Ex parte Evers, 434 So.2d 813, 816 (Ala. 1983); Fuller v. State, 257 Ala. 502, 60 So.2d 202, 205 (1952).'
 "Ex parte Jackson, 614 So.2d 405, 406 (Ala. 1993) (emphasis added). `[T]he fundamental rule [is] that criminal statutes are construed strictly against the State. See Ex parte Jackson, 614 So.2d 405 (Ala. 1993).' Ex parte Hyde, 778 So.2d 237, 239 n. 2 (Ala. 2000) (emphasis added). The `rule of lenity requires that "ambiguous criminal statute[s] . . . be construed in favor of the accused."' Castillo v. United States, 530 U.S. 120, 131, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000) (paraphrasing Staples v. United States, 511 U.S. 600, 619 n. 17, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994))."
884 So.2d at 891-92.
Applying the foregoing rules of construction, we conclude that the statute defining "attempt" does not clearly evince a legislative intent to apply the doctrine of transferred intent — applicable only to the completed crime of murder — to punish as attempted murder the consequences of an unintended, nonfatal result. To hold otherwise would be to rewrite the attempt statute so as to imbue an attempt with not only the intent to commit the specific offense attempted, but also such other intent as wouldbe imputed to a defendant by operation of law only uponconsummation of the offense solely by reason of harboring thespecific intent necessary to commit such offense. Likewise, a contrary holding would ignore the fact that an attempt is complete upon the doing of "any overt act towards the commission of the offense," an act that of necessity always precedes the event required to bring into play the doctrine of transferred intent — the death of an innocent bystander. It is indeed tempting to be energized by a combination of moral outrage that justifies the Legislature's application of the doctrine of transferred intent to the completed crime of murder and the fact of the horrific injury to Fails,[2] and thereby to read into the attempt statute the words necessary to affirm Cockrell's conviction for the attempted murder of Fails. That extrapolation, however, is within the exclusive purview of the Legislature. *Page 182 
Under the attempted-murder statute as it is currently written, and given the record before it, including an indictment charging Cockrell with the attempted murder of Fails, not Ivey, the Court of Criminal Appeals correctly reversed the judgment of the trial court.
The judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
HOUSTON and WOODALL, JJ., concur.
JOHNSTONE and HARWOOD, JJ., concur specially.
SEE, BROWN, and STUART, JJ., dissent.
[1] The Connecticut murder statute is similar to § 13A-6-2; it provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person. . . ." Conn. Gen.Stat. § 53a-54a. (emphasis added).
[2] Compare State v. Fennell, 531 S.E.2d at 518 ("A person who, acting with malice, unleashes a deadly force in an attempt to kill or injure an intended victim should anticipate that the law will require him to answer fully for his deeds when that force kills or injures an unintended victim.").