17-2245-cr
*United States v. Evans*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2018

Argued: September 24, 2018          Decided: May 8, 2019

No. 17-2245-cr

_____

UNITED STATES OF AMERICA

*Appellee*,

-v.-

RONALD EVANS,

*Defendant-Appellant*,

TASHINE KNIGHTER,

*Defendant*.

_____

Before:    WESLEY, LIVINGSTON, *Circuit Judges*, and CRAWFORD, *District Judge*.[*]

_____

[*] Judge Geoffrey W. Crawford, of the United States District Court for the District of Vermont, sitting by designation.

Defendant-Appellant Ronald Evans appeals the district court's June 16, 2017 decision and order resentencing him to 180 months' imprisonment following both his guilty plea to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and the subsequent grant of his habeas petition on the ground that his original sentence was rendered retroactively invalid under *Johnson v. United States*, 135 S.Ct. 2551 (2015). Evans now claims that two of his ACCA predicates—second-degree burglary under North Carolina law and federal bank robbery—do not qualify as "violent felonies" under ACCA. We conclude that second-degree burglary under North Carolina law qualifies categorically as a violent felony under ACCA's "enumerated clause." We also conclude that federal bank robbery qualifies categorically as a violent felony under ACCA's "elements clause." The district court therefore did not err in determining that Evans was subject to ACCA's mandatory minimum term of imprisonment of 180 months. Accordingly, the judgment of the district court is AFFIRMED.

FOR APPELLEE:                    MONICA J. RICHARDS, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, New York.

FOR DEFENDANT-APPELLANT:         REETUPARNA DUTTA, Hodgson Russ LLP, Buffalo, New York.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

The Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e)(2)(B), imposes a 15-year mandatory minimum sentence if a defendant is convicted of being a felon in possession of a firearm following three prior convictions for a "violent felony." This appeal presents the latest entry in a series of cases defining offenses that qualify as "violent felonies" for an enhanced sentence under ACCA.

Specifically, this case calls upon us to answer two questions of first impression in this Circuit: (1) whether second-degree burglary in violation of North Carolina General Statute § 14-51 qualifies as a "violent felony" under ACCA's "enumerated clause"; and (2) whether federal bank robbery in violation of 18 U.S.C. § 2113(a) qualifies as a "violent felony" under ACCA's "elements clause." For the reasons outlined below, we answer these two questions in the affirmative and hold that both statutes are "violent felonies" within the ambit of ACCA. We therefore AFFIRM the July 14, 2017 judgment of the district court sentencing Defendant-Appellant Ronald Evans pursuant to ACCA (Richard J. Arcara, *Judge*).[1]

---

[1] Evans's Notice of Appeal, filed on June 30, 2017, refers only to the district court's sentence entered on June 16, 2017. The district court did not enter judgment until July 14, 2017. We construe Evans's Notice of Appeal as referring to the July 14th judgment. *See* Fed. R. App. P. 4(b)(2) ("A notice of appeal filed after the court announces a decision, sentence, or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry."); *see also Manrique v. United States*, 137 S.Ct. 1266, 1273 (2017) (construing Federal Rule of Appellate Procedure 4(b)(2)).

## BACKGROUND

### I. Factual Background[2]

Defendant-Appellant Ronald Evans ("Evans") was charged by way of a seven-count indictment with manufacturing and uttering counterfeit currency and conspiracy to manufacture and utter counterfeit currency, in violation of 18 U.S.C. §§ 471, 472, 473 and 2, and unlawful possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).   On July 26, 2011 Evans pled guilty to the count of the indictment charging him with being a felon in possession of a firearm. ACCA provides that a person who violates § 922(g) and who has three previous convictions for a "violent felony" shall be imprisoned for a minimum of 15 years. 18 U.S.C. § 924(e).   ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

---

[2] The factual background presented here is derived from undisputed facts from the parties' submissions, uncontroverted testimony presented at sentencing, and Evans's presentencing report.

*Id.* at § 924(e)(2)(B). The first clause is referred to as ACCA's "elements clause," *Stokeling v. United States*, 139 S.Ct. 544, 549 (2019), the first portion of the second clause—"is burglary, arson, or extortion"—as ACCA's "enumerated clause," *id.* at 556, and the remainder as ACCA's "residual clause," *Johnson v. United States*, 135 S.Ct. 2551, 2556 (2015). Evans acknowledged in his written plea agreement that he qualified as an armed career criminal based on three prior violent felony convictions, subjecting him to a 15-year mandatory minimum sentence. The district court accordingly sentenced Evans to 180 months' imprisonment on September 25, 2012.

On May 3, 2016 Evans filed a motion in conjunction with a previously filed habeas petition, asserting that his ACCA status had been rendered retroactively invalid under *Johnson*, 135 S.Ct. at 2257, which struck down ACCA's residual clause under the void-for-vagueness doctrine. The district court granted Evans's motion, concluding that his prior sentence had indeed been rendered retroactively invalid under *Johnson* because one of his three ACCA predicate convictions (for attempted burglary in the third-degree in violation of N.Y. Penal Law § 140.20) had qualified as a violent felony only under ACCA's voided residual clause. The district court, however, transferred the matter to the original sentencing judge for

resentencing, directing the court to consider whether any of Evans's *other* prior convictions could be substituted as ACCA predicates.

At a resentencing hearing held on June 16, 2017, the district court determined that among Evans's criminal history at least three offenses qualified as "violent felonies" under ACCA, such that Evans continued to face a mandatory minimum sentence of 15 years. Appendix ("A.") 477–505. First, Evans was convicted in 1982 of federal bank robbery in violation of 18 U.S.C. § 2213(a). According to his presentencing report, this conviction occurred after he approached a teller window at a bank branch in Buffalo, New York, and then handed the teller a blue tote bag and a demand note that read, "I have a gun fill bag." Next, in 1983, Evans was convicted of federal armed bank robbery in violation of 18 U.S.C. § 2113(d). The conduct underlying this conviction involved Evans and two co-conspirators entering a bank in Buffalo wearing ski masks and armed with a pistol and a shotgun, yelling "Everyone get down, this is a hold up!" Finally, Evans was convicted in 2001 in North Carolina of second-degree burglary in violation of N.C. Gen Stat. § 14-51. According to his presentencing report, this conviction occurred after he and an accomplice broke into a home, confined and restrained the victims therein, hit one victim with a hand gun and proceeded to

6

steal property with a combined value of $30,000. The district court determined that the first two offenses qualified categorically as violent felonies under ACCA's elements clause, and that the final offense qualified categorically as a violent felony under ACCA's enumerated clause. Accordingly, the district court re-sentenced Evans to 180 months' imprisonment, the same sentence as was originally imposed. This appeal followed.

## DISCUSSION

Having laid out the facts surrounding Evans's appeal, we now set them aside in order to ascertain whether his predicate convictions qualify as crimes of violence under ACCA. *See Mathis v. United States*, 136 S.Ct. 2243, 2248 (2016) ("Facts . . . are mere real-word things . . . . ACCA . . . cares not a whit about them." (internal citation omitted)). On appeal we consider Evans's claim that two of his ACCA predicates—second-degree burglary under North Carolina law and federal

bank robbery—do not categorically qualify as crimes of violence within the meaning of 18 U.S.C. § 924(e).[3]  We conclude that they do.

I

We first consider whether Evans's conviction for second-degree burglary under North Carolina law qualifies as a "crime of violence" under ACCA's so-called "enumerated clause."  By way of reminder, ACCA imposes a 15-year mandatory minimum sentence on defendants, such as Evans, who are convicted of violating § 924(g) and have already accrued three prior convictions for the commission of violent felonies.  The enumerated clause defines "violent felony" to include any crime punishable by imprisonment for more than a single year, that, in relevant part, "is burglary, arson, or extortion."  *See* 18 U.S.C. § 924(e)(2)(B)(ii).

To determine whether a past conviction is for an enumerated offense under ACCA, courts employ a "categorical approach."  *Descamps v. United States*, 570 U.S. 254, 261 (2013) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)); *see also Mathis*, 136 S.Ct. at 2248–51 (outlining the categorical approach and applying it to a state burglary conviction).  This approach requires us to evaluate a prior

---

[3] Evans concedes on appeal that his 1983 conviction for armed bank robbery in violation of 18 U.S.C. § 2113(d) is a qualifying offense.

8

conviction "in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008). To do so, we "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood." *Descamps*, 570 U.S. at 257.

In other words, we identify "the minimum criminal conduct necessary for conviction under a particular statute," *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006) (per curiam), and determine whether *that* conduct falls within the scope of the "generic" definition of the crime. To show a predicate conviction is not a violent felony, there must be "'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not constitute" a violent felony. *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018) (quoting *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 193 (2007)).

As noted above, Evans was convicted in 1982 of second-degree burglary under North Carolina law. Although ACCA enumerates "burglary" as a "violent felony," pursuant to the categorical approach not every offense labeled as "burglary" under *state* law qualifies as a violent felony under ACCA. *Taylor*, 495

9

U.S. at 602; *Mathis*, 136 S.Ct. at 2250–51 (holding that where the parties agreed that Iowa's burglary statute "cover[ed] more conduct than generic burglary does" the statute did not qualify as a violent felony under ACCA); *see also Descamps*, 570 U.S. at 282 (Alito *J.*, dissenting) ("While the concept of a conviction for burglary might seem simple, things have not worked out that way . . . ."). To determine whether a past conviction for burglary qualifies as a violent felony under ACCA, courts employing the categorical approach accordingly "compare the elements of the crime of conviction with the elements of the 'generic' version" of burglary. *Mathis*, 136 S.Ct. at 2247. Thus, we focus here on whether the elements of North Carolina second-degree burglary "are the same as, or narrower than, those of generic burglary." *Descamps*, 570 U.S. at 282. We conclude that they are and therefore that Evans's conviction for second-degree burglary under North Carolina law qualifies as a violent felony under ACCA.

The Supreme Court has defined "generic burglary" as the "unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *United States v. Stitt*, 139 S.Ct. 399, 405–06 (2018) (quoting *Taylor*, 495 U.S. at 598). Thus, in order to qualify categorically, a state burglary

offense must require (1) the unlawful or unprivileged entry (2) into a dwelling (3) with the intent to commit a crime.

North Carolina defines common law burglary as "the breaking and entering of a dwelling house of another in the nighttime with the intent to commit a felony therein." *State v. Williams*, 333 S.E.2d 708, 720 (N.C. 1985). Moreover, State appellate court decisions clarify that an "unlawful or unprivileged entry" is also an essential element of common law burglary. *United States v. Mack*, 855 F.3d 581, 586 (4th Cir. 2017) (citing *State v. Upchurch*, 421 S.E.2d 577, 588 (N.C. 1992)); *see also United States v. Walker*, 595 F.3d 441, 443–44 (2d Cir. 2010) (noting that in employing the categorical approach "[a] statute is not merely analyzed on its face; rather, we consider the statutory language as it has been elucidated by the relevant state's courts").

Common law burglary occurs in the second-degree in North Carolina when:

> committed in a dwelling house or sleeping apartment not actually occupied by anyone at the time of the commission of the crime, or if it be committed in any house within the curtilage of a dwelling house or in any building not a dwelling house, but in which is a room used as a sleeping apartment and not actually occupied as such at the time of the commission of the crime.

N.C. Gen. Stat. § 14-51. Thus, in order to obtain a conviction for second-degree burglary in North Carolina, the State must prove (i) the unlawful breaking and

11

entering (ii) in the nighttime (iii) into a dwelling house or sleeping apartment (iv) unoccupied at the time of the offense (v) with the intent to commit a felony therein.

At first glance, second-degree burglary under North Carolina law would not appear to be broader than the generic definition of burglary. And indeed, the Fourth Circuit has already concluded that *first-degree* burglary in North Carolina satisfies the generic definition of burglary for the purposes of applying the United States Sentencing Guidelines (the "Guidelines"). *See Mack*, 855 F.3d at 586.

Evans argues on appeal, however, that second-degree burglary under North Carolina law is broader than the generic definition of burglary because it can encompass unlawful entry into mobile conveyances. He relies on a few North Carolina cases to support his argument. *See, e.g.*, *State v. Taylor*, 428 S.E.2d 273, 274 (N.C. Ct. App. 1993) (holding that an eight by twelve-foot trailer parked on a farm qualifies as a "dwelling" for the purpose of affirming a first-degree burglary conviction); *State v. Douglas*, 277 S.E.2d 467, 470 (N.C. Ct. App. 1981), *affm'd at* 285 S.E.2d 802 (N.C. 1982) (defining "an unoccupied mobile home" as a "building" for the purposes of N.C. Gen. State § 14-54, a lesser included offense of second-degree burglary). Evans points also to the Supreme Court's decision in *Taylor v. United States*, which, he argues, indicated that burglary of certain nontypical structures

and vehicles falls outside the scope of generic burglary. *See Taylor*, 495 U.S. at 599 (noting that some states "define burglary more broadly" than generic burglary "by including places, such as automobiles and vending machines, other than buildings").

The mobile home door left slightly ajar by *Taylor*, however, has been closed shut by the Supreme Court's more recent opinion in *Stitt*, holding that "burglary of a nonpermanent or mobile structure that is adapted or used for overnight accommodation can qualify as 'burglary' under [ACCA]." *Stitt*, 139 S.Ct. at 404–06. The Court reasoned that such a definition satisfies the "generic" definition of burglary because it accords with state criminal codes at the time of ACCA's passage. *Id.* at 406. Moreover, the Court noted, in passing ACCA, Congress would have viewed burglary of a vehicle used for overnight accommodation as inherently dangerous because "[a]n offender who breaks into a mobile home, an RV, a camping tent, a vehicle, or another structure that is adapted for or customarily used for lodging runs a . . . risk of violent confrontation." *Id.*

Following *Stitt*, then, it is clear that second-degree burglary under North Carolina law fits within the generic definition of burglary. North Carolina's statute and the case law surrounding it establish that second-degree burglary

criminalizes only breaking and entering into a "dwelling house" or "sleeping apartment." N.C. Gen. Stat. § 14-51. North Carolina courts have held that a mobile structure qualifies as such only if "the victim has made that trailer an area of repose, one which he can reasonably expect to be safe from criminal intrusion." *Taylor*, 428 S.E.2d at 274. Thus, burglary under North Carolina law does not extend to the breaking and entering of a mere automobile, but instead aligns with the Supreme Court's definition of generic burglary, encompassing such unlawful entry of a vehicle that is "adapted for or customarily used for lodging." *Stitt*, 139 S.Ct. at 406.

In sum, even though a *mobile* home can qualify as a "dwelling house" under North Carolina law, such a definition, as *Stitt* makes clear, does not broaden the statute beyond ACCA's reach. We therefore hold that second-degree burglary in violation of N.C. Gen. State § 14-51 qualifies as a violent felony under ACCA's enumerated clause.

## II

Evans next argues that his prior conviction for federal bank robbery in violation of 18 U.S.C. § 2113(a) does not categorically qualify as a violent felony

under ACCA's elements clause.   By way of reminder, ACCA's elements clause

defines the term "violent felony" as "an offense that is a felony" and

> (i) has as an element the use, attempted use, or threatened use of physical force against the person or property of another.

8 U.S.C. § 924(e).   The federal bank robbery statute provides:

> (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . .
>
> Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a).

To address Evans's claim we again apply the "categorical approach."

*Stokeling*, 139 S.Ct. at 554–55 (applying the categorical approach in holding that

robbery under Florida law qualifies as a predicate violent felony under ACCA's

elements clause).   "This approach, familiar by now, involves two steps: first we

identify the elements of the predicate conviction by determining the minimum

criminal conduct a defendant must commit to be convicted; second, we determine

whether that minimum criminal conduct has as an element the use, attempted use,

or threatened use of physical force."   *United States v. Moore*, 916 F.3d 231, 240 (2d

Cir. 2019) (internal quotation marks omitted).  Once more, we may not "consider the facts of the offense conduct . . . under the rigidly structured regime of categorical analysis."  *Villanueva v. United States*, 893 F.3d 123, 128 (2d Cir. 2018) (internal quotation marks and citation omitted).

Evans argues that federal bank robbery does not categorically qualify as a crime of violence under ACCA's elements clause because the offense "encompasses 'intimidation' and 'extortion' as 'means' by which the offense can be accomplished."  Br. Def-Appellant at 30.  First, we need not address Evans's argument regarding bank robbery "by extortion" because we agree with the Ninth Circuit that § 2113(a) "contains at least two separate offenses, bank robbery and bank extortion." *United States v. Watson*, 881 F.3d 782, 786 (9th Cir. 2018).  Because Evans was convicted of bank *robbery*—indeed Congress amended the statute *after* his conviction to include bank extortion, Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. No. 99-646 § 68, 100 Stat. 3592, 3616 (amending 18 U.S.C. § 2113(a))—we need not decide whether bank extortion qualifies as a crime of violence.

Evans's argument therefore hinges entirely on whether bank robbery "by intimidation" is categorically a crime of violence.  In answering this question "we

16

do not write on a blank slate." *Hill*, 890 F.3d at 56. As we recently observed in concluding that federal credit union robbery qualifies as a crime of violence for the purposes of 18 U.S.C. § 924(c), "this circuit, in a summary order, and our sister circuits, in published opinions, have consistently held that federal bank robbery by intimidation is a crime of violence under the force clause of various sentence enhancement Guidelines and statutes."[4] *United States v. Hendricks*, 2019 WL 1560582 at *5 (2d Cir. Apr. 11, 2019) (quotation marks omitted). These decisions have rejected the same argument that Evans advances here.[5] As the Fourth

---

[4] 18 U.S.C. § 924(c)(3)'s "force clause" defines the term "crime of violence" as "an offense that is a felony" and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* at § 924(c)(3)(A). We have noted the similarities between ACCA's "elements clause" and § 924(c)(3)'s "force clause" and have accordingly looked to cases analyzing ACCA's elements clause to interpret the "similarly . . . worded" force clause presented in 924(c)(3)(A)). *Hill*, 890 F.3d at 56. We have done the same with § 4B1.2 of the Guidelines, which defines "crime of violence" for purposes of the "career offender" enhancement, U.S.S.G. § 4B1.1(a), as an offense that is a felony and that "has as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1); *see also United States v. Walker*, 595 F.3d 441, 443 n.1 (2d Cir. 2010) ("Given the substantial similarity between the [ACCA's] definition of 'violent felony' and the [Guidelines'] definition of 'crime of violence,' authority interpreting one phrase frequently is found to be persuasive in interpreting the other phrase.") (alterations in original) (quoting *United States v. Winter*, 22 F.3d 15, 18 n.3 (1st Cir. 1994)).

[5] *See United States v. Ellison*, 866 F.3d 32, 39–40 (1st Cir. 2017) (holding that federal bank robbery qualifies as a crime of violence under the Guidelines' career offender "force clause"); *United States v. Brewer*, 848 F.3d 711, 715–16 (5th Cir. 2017) (same); *United States v. McBride*, 826 F.3d 293, 296 (6th Cir. 2016) (same); *United States v. Wright*, 957 F.2d 520, 521–22 (8th Cir. 1992) (same); *United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991) (same);

Circuit has persuasively argued, "[a] taking 'by force and violence' entails the use of physical force. Likewise, a taking 'by intimidation' involves the threat to use *such force*." *United States. v. McNeal*, 818 F.3d 141, 153 (4th Cir. 2016) (emphasis added); *see also United States v. Gutierrez*, 876 F.3d 1254, 1257 (9th Cir. 2017) ("'[I]ntimidation' as used in the federal bank robbery statute requires that a person take property in such a way that would put an ordinary, reasonable person in fear of bodily harm, which necessarily entails the threatened use of physical force." (internal quotation marks omitted)); *United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991) ("There is no 'space' between 'bank robbery' and 'crime of violence' . . . because violence in the broad sense that includes a merely threatened use of force is an element of every bank robbery.").

The decades-old out of circuit case law on which Evans relies in arguing to the contrary merely confirms that bank robbery by intimidation necessarily involves the threat to use force. Evans cites to instances where a defendant was

---

*United States v. Gutierrez*, 876 F.3d 1254, 1256–57 (9th Cir. 2017) (holding that federal bank robbery is a crime of violence under § 924(c)(3)(A)); *United States. v. McNeal*, 818 F.3d 141, 156–57 (4th Cir. 2016) (same); *see also United States v. Horsting*, 678 F. App'x 947, 949–50 (11th Cir. 2017) (unpublished opinion) (concluding that federal bank robbery constitutes a "violent felony" under ACCA); *Kucinski v. United States*, No. 16-cv-201-PB, 2016 WL 4444736, at *3 (D.N.H. Aug. 23, 2016) (noting that "a number of courts have rejected these same arguments, and determined—unanimously, it appears—that federal bank robbery constitutes a violent felony under the ACCA").

convicted of bank robbery after making an emphatic written demand for money, absent explicitly threatening to use force or violence. *See, e.g., United States v. Henson*, 945 F.2d 430, 439 (1st Cir. 1991) (affirming bank robbery conviction where evidence demonstrated that defendant stood within two feet of the teller and handed her a note directing her to "put fifties and twenties into an envelope now!!"); *United States v. Bingham*, 628 F.2d 548, 549 (9th Cir. 1980) (affirming bank robbery conviction where evidence demonstrated that defendant told teller that "she had 'three seconds' to give him the money in the top drawer, and then repeated this demand"). Contrary to Evans's assertion, these examples establish that where a defendant commits bank robbery without engaging in acts of force or violence, he necessarily invokes "the *threat* to use . . . force." *McNeal*, 818 F.3d at 153 (emphasis added). And a defendant issuing such a threat does not need to "specif[y] . . . any particular means in order [for that threat] to be effective." *Hill*, 890 F.3d at 59. In other words, a demand to "give me all your money" carries with it an implicit threat of force. Only in "backing down in the face of these threats [do] the victims avoid physical force." *United States v. Pereira-Gomez*, 903 F.3d 155, 166 (2d Cir. 2018) (holding that attempted robbery in the second degree

19

under New York law qualifies as a "crime of violence" under the Guidelines' "force clause").

Evans also argues that "intimidation" for the purposes of § 2113(a) requires only "putting the victim in fear of bodily harm," *United States v. McCormack*, 829 F.2d 322, 324 (2d Cir. 1987), and that the threatened use of physical force is not, in fact, essential to placing a person in such fear.   Evans contends—though he cites to no case law on the subject—that federal bank robbery could theoretically be achieved by threatening to "injure" a victim via an indirect means such as "poison."   Br. Def-Appellant at 34.   We reject this argument as well.

First, for the purposes of applying the categorical approach, "hypotheticals are insufficient" because a defendant must show that there is a "realistic probability" that federal bank robbery would reach the conduct Evans describes. *Hill*, 890 F.3d at 58 (internal quotation marks omitted).   The categorical approach "requires more than the application of legal imagination to a . . . statute's language."   *Deunas-Alvarez*, 549 U.S. at 193.   Evans has not unearthed an

example of "bank robbery by poison," so his attempt at applying "legal imagination" to the federal bank robbery statute must accordingly fail, *id.*[6]

Next, we have already rejected the argument that placing another in fear of injury—even indirect injury—does not involve a threat or use of force, *see Hill*, 890 F.3d at 59–60, and we do so again today. As we held in *Hill*:

> [A] robbery still has as an element "the use, attempted use, or threatened use of physical force against the person or property of another," notwithstanding that it is accomplished by threatening to poison a victim, rather than to shoot him. Some threats do not require specification of any particular means in order to be effective; yet they still threaten *some* type of violence and the application of *some* force. Consider: "That's a nice car—would you like to be able to continue driving it?"

*Id.* at 59. Evans suggests that our decision in *Hill* is not binding here because it relied on the Supreme Court's decision in *Castleman*, which interpreted the word "force" as employed in connection with a different statute, 18 U.S.C. § 922(g)(9) (defining a misdemeanor crime of violence). *See United States v. Castleman*, 572 U.S. 157, 168 (2014). But *Hill* applied *Castleman*'s reasoning to 18 U.S.C. § 924 (at

---

[6] Furthermore, *McCormack*, on which Evans relies, does not define "intimidation" for the purposes of interpreting the federal bank robbery statute, as Evans contends. Instead, the decision merely recites the jury instructions given by the district court in that particular case. *See McCormack*, 829 F.2d at 324–25 (holding that it was "inconceivable that any juror, after finding that [the defendant] pointed a gun at the bank teller and threatened to blow her head off, would conclude that she was not intimidated").

21

issue here), noting that there was "no persuasive reason why the same principle should not apply to the construction of § 924(c)(3)." *Hill*, 890 F.3d at 59. We find *Castleman's* reasoning equally persuasive in the present case.[7]

For the numerous reasons catalogued above, federal bank robbery "requires the use or threat of force in order to overcome the victim's resistance to the theft," *Moore*, 916 F.3d at 242 ( citing *Stokeling*, 139 S.Ct. at 555), and therefore qualifies as a "violent felony" under ACCA's elements clause.

\* \* \*

The aspirations behind the categorical approach first articulated in *Taylor* were worthy ones. The Supreme Court hoped to remain faithful to "ACCA's text and history[,] . . . avoid[] the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries[, a]nd . . . avert[] 'the practical difficulties and potential unfairness of a factual approach.'"

---

[7] Recent Supreme Court guidance interpreting ACCA's elements clause buttresses our conclusion that federal bank robbery qualifies as a crime of violence under ACCA. The Supreme Court has now established that threatened force need not be of a particular strength in order to fall within ACCA's elements clause. *Stokeling*, 139 S.Ct. at 554. "Force" is "violent" for the purposes of ACCA if it is sufficient to "overcome the victim's resistance . . . however slight that resistance might be." *Id*. at 550. Thus, while Evans attempts to distinguish between the use of "*some* force" or "*indirect* force" and the use of "*violent* force," his proffered distinctions must fail. Evans has not offered an example of federal bank robbery that does not involve force sufficient to "overcome the victim's resistance," and this court has been unable to conceive of one.

22

*Descamps*, 570 U.S. at 267 (quoting *Taylor*, 495 U.S. at 600–01). But the laudable goals motivating this approach have not been realized. *See Mathis*, 136 S.Ct. at 2258 (Kennedy *J.*, concurring) (labeling the categorical approach "a system that each year proves more unworkable"); Transcript of Oral Argument at 26, *Stitt*, 139 S.Ct. (No. 17-765) (Alito *J.*) (characterizing the Court's categorical approach jurisprudence as "one royal mess").

In hindsight, judicial difficulties with the categorical approach might have been expected. The approach demands that federal courts employ an analysis for which they are not constitutionally (or practically) suited. While cases such as Evans's undoubtedly pose an actual case or controversy as the Constitution demands, *see* U.S. Const. art. III § 2, cl. I, the categorical approach paradoxically instructs courts resolving such cases to embark on an intellectual enterprise grounded in the facts of *other* cases not before them, or even *imagined* scenarios. Courts are required to discern the outer reaches of countless federal and state statutory provisions in an exercise most reminiscent of the law school classroom, and quite alien to courts' well-established role of adjudicating "concrete legal issues, presented in actual cases, not abstractions." *United Public Workers v. Mitchell*, 330 U.S. 75, 89 (1947) (quotation marks omitted).

A solution lies with two sources: Congress, which can "amend[] the ACCA," and the Supreme Court, which may "revisit its precedents in an appropriate case." *Mathis*, 136 S.Ct. at 2258 (Kennedy *J.*, concurring) (calling for a reconsideration of the categorical approach should "continued congressional inaction" persist). Mindful of the competing textual, constitutional, and practical concerns underpinning the categorical approach, we offer no opinion as to which of the many proposed solutions—from a conduct-specific approach[8] to eliminating mandatory minimums[9]—may be appropriate. We ask only that Congress or the Supreme Court take action. Until such time, the litany of ACCA challenges will continue, as will our efforts faithfully to apply the categorical approach, however

---

[8] *See, e.g.*, U.S. Sent'g Commission, Proposed Amendments to the Federal Sentencing Guidelines (Dec. 13, 2018), http://www.ussc.gov/sites/default/files/pdf/news/press-releases-and-news-advisories/press-releases/20181213_News-Release.pdf (announcing proposed amendment to the Guidelines that would "enable the sentencing courts to consider the conduct that formed the basis of the offense of conviction" in light of the "extensive litigation" and "inconsistent sentencing outcomes" that have resulted from the categorical approach).

[9] *See, e.g.*, Stephen J. Schulhofer, *Rethinking Mandatory Minimums*, 28 WAKE FOREST L. REV. 199, 221–22 (1993) (arguing that Congress should eliminate mandatory minimums in favor of greater reliance on discretionary Guidelines, which "can achieve a substantial degree of determinacy, predictability, uniformity and even severity . . . [while still] preserv[ing] discretion . . . and allow[ing] sufficient flexibility to avoid the inequities and process costs that rigid mandatories entail"); *see also United States v. Booker*, 543 U.S. 220, 223 (2005) (explaining that "advisory [sentencing] provisions that recommend[], rather than require[], the selection of particular sentences in response to differing sets of facts, . . . would not implicate the Sixth Amendment").

awkward its demand that judges deciding cases act, instead, the part of law school professors spinning out hypotheticals.

## CONCLUSION

We conclude that second-degree burglary under North Carolina law qualifies categorically as a crime of violence under ACCA's enumerated clause and that federal bank robbery qualifies categorically as a crime of violence under ACCA's elements clause. We therefore AFFIRM the judgment of the district court.