*United States v. Delgado*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2024

(Argued: November 22, 2024          Decided: August 27, 2025)

No. 23-8120

_____

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

DANIEL DELGADO,

*Defendant-Appellant.*

_____

Before:     LIVINGSTON, Chief Judge, JACOBS, and MENASHI, Circuit Judges.

Defendant-Appellant Daniel Delgado ("Delgado") appeals from a judgment of the United States District Court for the Southern District of New York (Karas, *J.*) convicting him, following his guilty plea, of knowingly possessing ammunition after being convicted of a felony in violation of 18 U.S.C. § 922(g)(1).  On appeal, Delgado argues (1) that 18 U.S.C. § 922(g)(1) violates the Second Amendment of the United States Constitution and (2) that the district court procedurally erred when it concluded that his prior conviction for attempted second-degree murder under Fla. Stat. §§ 782.04(2) and 777.04(1) was a crime of violence pursuant to

1

§ 2K2.1(a) of the United States Sentencing Guidelines. We disagree. Delgado's constitutional challenge is foreclosed by our decision in *Zherka v. Bondi*, 140 F.4th 68 (2d Cir. 2025), which recently reaffirmed the constitutionality of 18 U.S.C. § 922(g)(1). We also agree with the district court that Florida's offense of attempted second-degree murder is a crime of violence. Accordingly, the judgment of the district court is **AFFIRMED.**

FOR APPELLEE:                    MICHAEL D. MAIMIN (Nathan Rehn, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

FOR DEFENDANT-APPELLANT:          EDWARD S. ZAS, Assistant Federal Public Defender, Federal Defenders of New York, Inc., New York, NY.

DEBRA ANN LIVINGSTON, *Chief Judge*:

Defendant-Appellant Daniel Delgado ("Delgado") appeals from a judgment of the United States District Court for the Southern District of New York (Karas, *J.*), entered on December 21, 2023, convicting him, following his guilty plea of knowingly possessing ammunition after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Delgado principally to thirty months' incarceration to be followed by a three-year term of supervised release.

On appeal, Delgado raises two arguments. First, he contends that the statute under which he was convicted, 18 U.S.C. § 922(g)(1), violates the Second Amendment of the United States Constitution in light of the Supreme Court's

decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). Second, he argues that the district court procedurally erred when it concluded that his prior conviction for attempted second-degree murder under Fla. Stat. §§ 782.04(2) and 777.04(1) was a crime of violence pursuant to § 2K2.1(a) of the U.S. Sentencing Guidelines (the "Guidelines").

We disagree. Delgado's constitutional challenge is foreclosed by our recent decision in *Zherka v. Bondi*, 140 F.4th 68 (2d Cir. 2025), which reaffirmed the constitutionality of § 922(g)(1) post-*Bruen*. We also discern no error in the district court's conclusion that attempted second-degree murder in violation of Fla. Stat. §§ 782.04(2) and 777.04(1) is categorically a crime of violence. The elements of Florida attempted second-degree murder include that a perpetrator "intentionally committed an act which would have resulted in the death of [a person]" and that "the act was imminently dangerous to another and demonstrating a depraved mind without regard for human life." *In re Standard Jury Instructions in Criminal Cases—Report 2017-06*, 236 So.3d 282, 294 (Mem.) (Fla. 2018). Satisfying these elements necessarily requires the use or attempted use of "physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). The district court therefore correctly

concluded that Florida attempted second-degree murder is a crime of violence pursuant to U.S.S.G. § 2K2.1(a).

Accordingly, we **AFFIRM** the judgment of the district court.

## BACKGROUND

On November 4, 2021, a New York State Police trooper pulled Delgado over after observing him driving erratically on the Taconic State Parkway. During the traffic stop, Delgado admitted to the trooper that his driver's license had been suspended. The trooper informed Delgado that he was not allowed to drive home on a suspended license and that his vehicle would be impounded. While waiting for a tow truck, the officer conducted an inventory search of the car, during which he discovered a loaded 9-mm pistol and a spare magazine containing a total of approximately 29 rounds of ammunition. The firearm was a privately assembled Glock-style gun commonly known as a "ghost gun." Delgado admitted that both the gun and ammunition belonged to him.

At the time he was found in possession of the gun and ammunition, Delgado had multiple prior convictions including, as relevant here, a felony conviction for attempted murder in the second degree in violation of Fla. Stat. §§ 782.04(2) and

4

777.04(1).[1] In 1999, Delgado shot a man in the back following an argument in front of a Fuddruckers restaurant in Miami, Florida. The victim sustained life-threatening injuries but ultimately survived. Delgado, who fled the scene following the shooting, was arrested the following day and subsequently convicted in Florida state court of attempted second-degree murder. Delgado initially served three years in prison for his crime but violated the terms of his parole shortly after his release by, *inter alia*, possessing an unauthorized firearm. Delgado was resentenced to a fifteen-year term of imprisonment.

On July 19, 2022, a grand jury returned an indictment charging Delgado with possessing ammunition after having previously been convicted of a felony, in violation of § 922(g)(1). On February 22, 2023, Delgado pleaded guilty without a plea agreement. He subsequently moved to withdraw his guilty plea and to dismiss the indictment on the ground that § 922(g)(1) is unconstitutional in light of the Supreme Court's decision in *Bruen*. The district court denied Delgado's motion, explaining that the Second Circuit's decision in *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013) (per curiam), which determined that § 922(g)(1) does not

---

[1] Delgado's other prior convictions include a 1998 conviction for carrying a concealed weapon, a 1998 conviction for petit larceny, a 2004 conviction for marijuana possession, and a 2013 conviction for possessing a contraband cellphone while in prison.

5

infringe the constitutional right to bear arms under the Second Amendment, remained binding precedent.

The Probation Office prepared a presentence investigation report ("PSR") in advance of Delgado's sentencing hearing. Pursuant to U.S.S.G. § 2K2.1(a)(4)(A), the Probation Department adopted a base offense level of 20 because Delgado had committed his offense after sustaining a felony conviction for a crime of violence— namely his conviction for attempted second-degree murder. After applying a three-level reduction for acceptance of responsibility, the PSR reflected a total offense level of 17 and a recommended sentencing range of 30 to 37 months' imprisonment.[2]

Delgado objected to the PSR, arguing that attempted second-degree murder under Fla. Stat. §§ 782.04(2) and 777.04(1) is not categorically a crime of violence under U.S.S.G. § 2K2.1(a) and that his base offense level should be 14. The district court disagreed and held that attempted second-degree murder under Florida law is indeed a crime of violence because it has "as an element of the offense [the] intentional use of violent force. . . . [I]t can't be done by recklessness or negligence

---

[2] The PSR's application of the Sentencing Guidelines was consistent with the government's calculation presented to Delgado in a *Pimental* letter before he pleaded guilty. *See United States v. Pimental*, 932 F.2d 1029, 1034 (2d Cir. 1991) (suggesting that the government "inform defendants [who are contemplating guilty pleas] . . . as to the likely range of sentences that their pleas will authorize under the Guidelines").

6

or . . . some lower standard than intentional conduct." App'x 334–35. The district court sentenced Delgado principally to 30 months' imprisonment, to be followed by three years' supervised release.

Delgado timely appealed.

## DISCUSSION

Delgado raises two arguments on appeal. First, he contends that the statute under which he was convicted, 18 U.S.C. § 922(g)(1), violates the Second Amendment of the United States Constitution. Second, he argues that the district court procedurally erred at his sentencing when it concluded that his prior conviction for attempted second-degree murder under Florida law is a crime of violence. We disagree with both arguments and address each in turn.

### I.     Constitutional Challenge

Delgado argues that § 922(g)(1) is unconstitutional in light of the Supreme Court's decision in *Bruen*. "We review challenges to the constitutionality of federal statutes *de novo*." *United States v. Griffith*, 284 F.3d 338, 345 (2d Cir. 2002).

Prior to *Bruen*, we held in *Bogle* that "§ 922(g)(1) is a constitutional restriction" on the right to bear arms of convicted felons. 717 F.3d at 281–82. Since Delgado's appeal, we have affirmed that "[o]ur holding in *Bogle* survives *Bruen*." *Zherka*, 140 F.4th at 75. Accordingly, Delgado's facial challenge to § 922(g)(1) fails.

7

Delgado also claims that § 922(g)(1) is unconstitutional as applied to him, but he fails to elaborate on why we should sustain an as-applied challenge in his case. We ordinarily decline to consider arguments that are raised in a conclusory fashion or made only in passing. *See Palin v. N.Y. Times Co.*, 113 F.4th 245, 279 (2d Cir. 2024) ("It is a settled appellate rule that issues . . . unaccompanied by some effort at developed argumentation are deemed forfeited.") (internal quotation marks omitted). But even if we were to consider Delgado's as-applied challenge, it would still fail under our decision in *Zherka*. In that case, we concluded that § 922(g)(1) is "an appropriate exercise of [Congress's] longstanding power to disarm dangerous categories of persons," including convicted felons. *See Zherka*, 140 F.4th at 91; *see also District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008). We also rejected the "contention that the prohibition on possession of firearms by convicted felons violates the Second Amendment as applied to 'nonviolent' felons.'" *Zherka*, 140 F.4th at 96. Here, nothing in the record indicates why it would be unconstitutional to apply § 922(g)(1) to a violent felon such as Delgado.

## II. Crime of Violence

Delgado next argues that the district court committed procedural error when it determined that his prior conviction for attempted second-degree murder

8

pursuant to Fla. Stat. §§ 782.04(2) and 777.04(1) constitutes a crime of violence for the purposes of § 2K2.1(a)(4)(A). We disagree.

"We review the procedural reasonableness of a sentence for abuse of discretion." *United States v. Cooper*, 131 F.4th 127, 130 (2d Cir. 2025) (per curiam). "A district court commits procedural error when it, *inter alia*, makes a mistake in its Guidelines calculation." *United States v. Taylor*, 961 F.3d 68, 74 (2d Cir. 2020) (quoting *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018) (per curiam)). In considering whether a district court committed procedural error, we review *de novo* "questions of law, including . . . interpretation of the Guidelines."[3] *Yilmaz*, 910 F.3d at 688.

Under U.S.S.G. § 2K2.1(a)(4)(A), a defendant convicted of violating § 922(g)(1) has a base offense level of 20 "if the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence." The commentary to the 2021 Guidelines provides that the term "'crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1

---

[3] Although Delgado argued at sentencing that Florida attempted second-degree murder is not a crime of violence, the government contends that the argument he made before the district court was substantially different from the argument he now advances on appeal and that we should therefore apply plain error review. Ultimately, we need not decide which standard of review applies because Delgado's challenge fails even under the more exacting *de novo* review.

of the Commentary to § 4B1.2."[4]  U.S.S.G. § 2K2.1 cmt. n.1.  Section 4B1.2(a)(1), in turn, provides that a "'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another."  This provision is commonly called the "elements clause."[5]

"To determine whether a previously committed state law crime . . . constitutes a crime of violence under U.S.S.G. § 2K2.1(a), we apply the . . . categorical approach."[6]  *Cooper*, 131 F.4th at 131.  The categorical approach involves a familiar two-step analysis: "first we identify the elements of the predicate conviction by determining the minimum criminal conduct a defendant must commit to be convicted; second, we determine whether that

---

[4] We rely on the 2021 version of the Guidelines because that was the "Manual in effect on the date that the defendant was sentenced."  U.S.S.G. § 1B1.11(a).

[5] Section 4B1.2(a)(2)—known as the "enumerated offenses" clause—also lists several offenses that are crimes of violence, including "murder" and "voluntary manslaughter."  U.S.S.G. § 4B1.2(a)(2).  The commentary of § 4B1.2 makes clear that the term "crime of violence" includes "the offenses of . . . attempt[s] to commit such offenses."  U.S.S.G. § 4B1.2 cmt. n.1.  Because Florida attempted-second degree murder requires the attempted use of force against the person of another, we need not decide whether it qualifies under the enumerated offenses clause.  *Cf. Stegemann v. United States*, 132 F.4th 206, 213 (2d Cir. 2025) (applying to the Sentencing Guidelines "the normal principle that an undefined term receives its ordinary meaning").

[6] When a state statute is "divisible," meaning the statute "sets out one or more elements of the offense in the alternative," we apply the modified categorical approach.  *Descamps v. United States*, 570 U.S. 254, 257 (2013).  As the parties acknowledge, the offense at issue here is not divisible, and so we apply the traditional categorical approach.

10

minimum criminal conduct 'has as an element the use, attempted use, or threatened use of physical force.'" *United States v. Moore*, 916 F.3d 231, 240 (2d Cir. 2019) (quoting U.S.S.G. § 4B1.2(a)(1)). "If the state statute prohibits any conduct that does not constitute a crime of violence, then the crime of conviction does not categorically constitute a crime of violence under section 2K2.1(a)." *Cooper*, 131 F.4th at 131. Under the categorical approach, we "are not permitted to consider the facts of the offense conduct," such as that Delgado committed attempted murder by shooting someone in the back. *Villanueva v. United States*, 893 F.3d 123, 128 (2d Cir. 2018).

We begin by "look[ing] to state law in identifying the elements of a crime." *United States v. Scott*, 990 F.3d 94, 104 (2d Cir. 2021) (en banc). In doing so, we are bound by the state supreme court's "interpretation of state law, including its determination of the elements" of the offense at issue. *Johnson v. United States*, 559 U.S. 133, 138 (2010). Here, Delgado was convicted under Fla. Stat. §§ 782.04(2) and 777.04(1). Section 782.04(2), the state's second-degree murder statute, criminalizes "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular

11

individual." Florida's attempt statute, Fla. Stat. § 777.04(1), provides that "[a] person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the preparation or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt."

Drawing from these two statutes, the Florida Supreme Court has articulated the two elements of attempted second-degree murder:

1. (Defendant) intentionally committed an act which would have resulted in the death of (victim) except that someone prevented (defendant) from killing (victim) or [he] [she] failed to do so.

2. The act was imminently dangerous to another and demonstrating a depraved mind without regard for human life.

*In re Standard Jury Instructions*, 236 So.3d at 294. An act is "imminently dangerous to another and demonstrating a depraved mind" if it is an act or series of acts that:

1. a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and

2. is done from ill will, hatred, spite, or an evil intent, and

3. is of such a nature that the act itself indicates an indifference to human life.

*Id.* In addition, under Florida law, "to convict the defendant of Attempted Second Degree Murder, it is not necessary for the State to prove the defendant had an intent to cause death." *Id.*

The question we must decide is whether, based on these elements, Florida attempted second-degree murder "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). We conclude that it does.

The parties do not dispute that attempted second-degree murder involves physical force. "[T]he phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. A statute criminalizing the actual killing of another person inevitably involves a level of force capable of causing physical pain or injury. *See United States v. Castleman*, 572 U.S. 157, 170 (2014) ("It is impossible to cause bodily injury without applying force in the common-law sense."). To be sure, in an *attempted* murder, the victim does not die and need not be physically injured at all. But § 4B1.2(a)(1) also covers the "attempted use" of force, and "if murder requires violent force because death results, then attempted murder does, too." *United States v. Báez-Martínez*, 950 F.3d 119, 132 (1st Cir. 2020); *see also Cooper*, 131 F.4th at

134 (holding that attempted second-degree assault is categorically a crime of violence). Because Florida attempted second-degree murder requires an "intentionally committed . . . act which would have resulted in . . . death," *In re Standard Jury Instructions*, 236 So.3d at 294, the offense plainly satisfies the physical force requirement.

Of course, to qualify as a crime of violence, the physical force must be used, attempted, or threatened "*against the person of another*." U.S.S.G. § 4B1.2(a)(1) (emphasis added). In *Borden v. United States*, a plurality of the Supreme Court explained that "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual."[7] 593 U.S. 420, 429 (2021). The *Borden* plurality held that crimes with a *mens rea* of ordinary recklessness, though they may involve physical force, do not require that force to be directed against another. *Id.* A defendant who recklessly commits a crime merely "pay[s] insufficient attention to the potential application of force." *Id.* at 432. "[B]ecause his conduct is not opposed to or directed at

---

[7] *Borden* concerned the definition of "violent felony" under the Armed Career Criminal Act ("ACCA"), as opposed to the definition of "crime of violence" under the Guidelines. "But our case law is clear that the Armed Career Criminal Act's definition of 'violent felony' is identical in all material respects to . . . [the] definition of 'crime of violence' under the Guidelines." *Cooper*, 131 F.4th at 132 n.2 (internal quotation marks omitted). Accordingly, we "look[ ] to cases analyzing ACCA's elements clause to interpret . . . § 4B1.2 of the Guidelines." *United States v. Evans*, 924 F.3d 21, 29 n.4 (2d Cir. 2019).

another . . . [h]e has not used force 'against' another person in the targeted way that [the elements] clause requires." *Id.* On the other hand, purposeful and knowing acts *are* sufficiently directed towards another person to qualify as crimes of violence. *Id.* And *Borden* was careful to note that it was talking about crimes requiring only *ordinary* recklessness. The plurality acknowledged that "[s]ome States recognize mental states (often called 'depraved heart' or 'extreme recklessness') between recklessness and knowledge" and explained that it had "no occasion to address whether offenses with those mental states fall within the elements clause." *Id.* at 429 n.4.

Although Florida's offense of attempted second-degree murder does not require an intent to cause death, it requires more than ordinary recklessness.[8] "A person acts recklessly, in the most common formulation, when he 'consciously disregards a substantial and unjustifiable risk' attached to his conduct, in 'gross

---

[8] In Delgado's reply brief, he posits that some Florida courts have, in practice, affirmed convictions for attempted second-degree murder based on ordinary recklessness. Neither of the cases Delgado cites for this proposition support his claim, in part because neither involved attempted second-degree murder. *See Pressley v. State*, 395 So. 2d 1175, 1177 (Fla. Dist. Ct. App. 1981) (concluding that there was sufficient evidence to convict a defendant of second-degree murder after he engaged in a shootout and accidently killed a bystander because his acts were "reasonably certain to kill or do serious bodily injury to another" and "indicated an indifference to human life and demonstrated ill will"); *U.S. Fid. & Guar. Co. v. Perez*, 384 So. 2d 904, 905 (Fla. Dist. Ct. App. 1980) (confirming that "firing a gun into a crowd of people constitutes second degree murder," even though a defendant has no intent to kill anyone). In any event, we must focus on the way the Florida Supreme Court has articulated the elements and leave to that court the task of policing the lower state courts. *See Johnson*, 559 U.S. at 138.

15

deviation' from accepted standards." *Id.* at 427 (quoting Model Penal Code § 2.02(2)(c)). But to commit attempted second-degree murder under Florida law, a perpetrator must "demonstrat[e] a depraved mind without regard for human life." *In re Standard Jury Instructions*, 236 So.3d at 294. In contrast to ordinary recklessness, this disregard stems from "ill will, hatred, spite, [or] an evil intent" and manifests in a defendant's conduct "toward [another] citizen." *Ramsey v. State*, 154 So. 855, 856 (Fla. 1934); *see also State v. Ellison*, 561 So. 2d 576, 577 (Fla. 1990) (rejecting a second-degree murder charge where there was insufficient evidence that Ellison acted out of ill-will, hatred, spite or an evil intent *toward* his eventual victim") (internal quotation marks omitted) (emphasis added). This "[d]epravity of mind is an inherent deficiency of moral sense and rectitude" and "the highest grade of malice." *Id.* at 855–56; *Borden*, 593 U.S. at 429 n.4. Florida attempted second-degree murder thus fits comfortably into the intermediate category of mental states that *Borden* left open.

In fact, a depraved mind, as defined by Florida law, is much closer to knowledge than to ordinary recklessness. *Borden* explained that a person "acts knowingly when 'he is aware that [a] result is practically certain to follow from his conduct,' whatever his affirmative desire." *Id.* at 426 (quoting *United States v.*

16

*Bailey*, 444 U.S. 394, 404 (1980)).  Knowing conduct includes those offenses where a person, "even though not affirmatively wanting the result, still makes a deliberate choice with full awareness of consequent harm."  *Id.*  Florida attempted second-degree murder requires an intentional act that is "reasonably certain to kill or do serious bodily injury to another," *In re Standard Jury Instructions*, 236 So.3d at 294.  In this way, extreme recklessness "approaches the definition of knowledge" because the risk is so high that "the harmful result nears 'practical certainty' that force will be applied to another person."  *United States v. Janis*, 73 F.4th 628, 633–34 (8th Cir. 2023).

Take, for example, the Florida Supreme Court's decision in *State v. Brady*, 745 So.2d 954 (Fla. 1999).  In *Brady*, the defendant was convicted of two counts of attempted second-degree murder for firing a single shot in a crowded nightclub that missed its intended target and hit another individual in the hand.  *Id.* at 955.  The Florida Supreme Court affirmed both convictions, explaining that "by intentionally firing a deadly weapon in close proximity to both [victims], the defendant intentionally committed an act that, had death resulted, would have constituted second-degree murder as to either [victim]."  *Id.* at 958.  Delgado reads *Brady* to hold that attempted second-degree murder does not require force to be

aimed at a specific person. But *Brady* emphasized that the decision to fire a gun in a crowded room is an act so imminently dangerous to other people that a jury could reasonably conclude that the defendant acted with a depraved mind by knowingly firing a gun in their vicinity. *Id.* at 957–58; *cf. Báez-Martínez*, 950 F.3d at 127 ("[T]he defendant who shoots a gun into a crowded room has acted with malice aforethought precisely because there is a much higher probability—a practical certainty—that injury to another will result. And the defendant certainly must be aware that there are potential victims before he can act with indifference toward them.").

Every circuit that has considered the question post-*Borden* has concluded that crimes involving mental states between ordinary recklessness and knowledge qualify as crimes of violence. *See United States v. Manley*, 52 F.4th 143, 150–51 (4th Cir. 2022) (holding that "reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice . . . necessarily requires conduct that uses physical force *against* another" because it is "closer in culpability to 'knowledge' than it is to 'recklessness'" (internal quotation marks omitted)); *United States v. Harrison*, 54 F.4th 884, 890 (6th Cir. 2022) (holding that complicity to commit murder involved

the use of force against the person of another because it "requires more than recklessness—at the very least it requires wantonness under circumstances manifesting an extreme indifference to human life" (internal quotation marks omitted)); *Janis*, 73 F.4th at 631 ("Because [federal second-degree murder] requires malice aforethought, the crime always involves 'consciously directed' force and thus constitutes a 'crime of violence.'"); *United States v. Begay*, 33 F.4th 1081, 1094–95 (9th Cir. 2022) (en banc) (holding that depraved heart murder, which includes reckless and wanton acts that cause death, is a crime of violence because there has to be a "finding that the defendant acted with *extreme indifference*, and that the indifference was *toward human life*"); *United States v. Kepler*, 74 F.4th 1292, 1303–04 (10th Cir. 2023) (holding that "depraved-heart second-degree murder is a crime of violence" because the offender "consciously use[s] deadly force 'against' someone"); *Alvarado-Linares v. United States*, 44 F.4th 1334, 1344–46 (11th Cir. 2022) (holding that both malice murder and attempted malice murder under Georgia law are crimes of violence).  We agree with those circuits.  Accordingly, we conclude Florida attempted second-degree murder has as an element the "attempted use . . . of physical force against the person of another" and therefore qualifies as a crime of violence.  U.S.S.G. § 4B1.2(a)(1).

19

Delgado seeks to avoid this commonsense conclusion by relying, not on the elements of attempted second-degree murder as articulated by the Florida Supreme Court, but on a single sentence drawn from that court's decision in *Fisher v. State*, 715 So.2d 950 (Fla. 1998) (per curiam). In *Fisher*, the defendant, Andre Fisher, got into a fight with a man named Karlon Johnson. *Id.* at 951. Hours later, Fisher and three coconspirators drove to the home of Johnson's sister, an address at which they believed Johnson was staying, and fired 35 shots into the house and its carport, where Johnson's car was parked. *Id.* One of the bullets struck and killed Johnson's five-year-old nephew. *Id.* Fisher was tried and convicted for first-degree premeditated murder and sentenced to death. *Id.* at 951–52.

Fisher appealed his conviction on the ground that the evidence failed to establish beyond a reasonable doubt the requisite premeditation—that he had a "fully formed purpose to kill," as is required under Florida law for first-degree premeditated murder. *Id.* at 952. The Florida Supreme Court agreed, holding that in order to prove premeditation by circumstantial evidence, the state must present evidence that excludes every "reasonable hypothesis that the homicide occurred other than by premeditated design" because "[p]remeditation is more than the mere intent to kill." *Id.* In explaining why "there was insufficient proof of

20

premeditation to convict of first-degree murder," the Florida Supreme Court explained that it could not "rule out the possibility that Fisher and his cohorts merely intended to frighten Johnson or damage his car." *Id.*

After explaining that Fisher's conviction for first-degree murder had to be reversed, the Florida Supreme Court added—without elaboration—that the proof adduced at trial was "clearly sufficient for a conviction of second-degree murder, which is defined as the unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual." *Id.* (internal quotation marks omitted). Latching upon this declaration in light of the court's preceding discussion of premeditation and the possibility that Fisher might have intended merely to frighten Johnson or to damage his car, Delgado asserts that completed second-degree murder can be committed "with the intent to use force against property only," and thus that attempted second-degree murder can also be committed by attempting to use force against property alone. Appellant's Br. at 23. But this is a misreading of the case.

In evaluating the sufficiency of the evidence that Fisher had committed second-degree murder, the Florida Supreme Court did *not* conclude that the intent to damage a car, resulting in death, was sufficient to establish the crime. The court instead concluded (unsurprisingly) that firing 35 shots into an apparently occupied home, resulting in the loss of life, sufficiently reflected the commission of an act "imminently dangerous to another and evincing a depraved mind regardless of human life" to prove the second-degree murder charge. *See Fisher*, 715 So.2d at 952 (quoting Fla. Stat. § 782.04(2)). Nothing in *Fisher* suggests, as Delgado contends, that a defendant could be convicted of completed second-degree murder—let alone attempted second-degree murder—based on shooting at a car *absent* such additional evidence demonstrating the elements of the offense. To be sure, second-degree murder under Florida law, unlike first-degree murder, does not require the establishment of a "fully formed *purpose* to kill." *Id.* at 952 (emphasis added). But it *does* require the killing of another person by an act "imminently dangerous to another and evincing a depraved mind regardless of human life." Fla. Stat. § 782.04(2). *Fisher* did not depart from this statutory language.

Although not necessary for him to prevail under the categorical approach, it is telling that Delgado has not identified an actual case in which a defendant was convicted of attempted second-degree murder in Florida for actions undertaken merely with the intent to use force against property. Delgado's argument depends on the implications of a single sentence from *Fisher*, which concerns premeditation in the context of first-degree murder and does not mention attempted second-degree murder, the offense at issue here. It is true that attempted second-degree murder involves the same "act that could have resulted, but did not result, in the death of someone." *Coicou v. State*, 39 So. 3d 237, 241 (Fla. 2010). But the act must also have "demonstrated a depraved mind without regard for human life." *Id.* We rely on the Florida Supreme Court's articulation of the elements of attempted second-degree murder. And, as discussed above, this offense requires an intentional act that not only "would have resulted in the *death of [a person]*" but also was "imminently dangerous *to another [person]* and demonstrating a depraved mind without regard *for human life*." *In re Standard Jury Instructions*, 236 So.3d at 294 (emphasis added). It is impossible to satisfy these elements without using or attempting to use force *against a person*.

## CONCLUSION

In sum, we conclude that Delgado's constitutional challenge to 18 U.S.C. § 922(g)(1) is without merit. We also agree with the district court that Delgado's conviction for attempted second-degree murder under Fla. Stat. §§ 782.04(2) and 777.04(1) constitutes a crime of violence for the purposes of U.S.S.G. § 2K2.1(a). We therefore conclude that the district court did not commit procedural error in its Guidelines calculation. Accordingly, we AFFIRM the judgment of the district court.